**Lizzie Hall BOWMAN,
Plaintiff–Appellee,**

v.

**James Howard BOWMAN, Elliott Bowman and wife Becky Bowman, Defendants–Appellants.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 18, 1991.

Application for Permission to Appeal
Denied by Supreme Court
March 16, 1992.

Mary Arline Evans, Nashville, for plaintiff-appellee.

Frank M. Fly, Burger, Fly & McFarlin, Murfreesboro, for defendant-appellant James Howard Bowman.

Royce Taylor, Murfreesboro, for defendants-appellants, Elliott and Becky Bowman.

## OPINION

LEWIS, Judge.

This is an appeal by appellant, James Howard Bowman, from the trial court's award of a divorce to his wife, appellee Lizzie Hall Bowman, from the trial court's division of marital property, the award of attorney's fees and the granting of alimony *in futuro*. Appellants Elliott Bowman and wife Becky Bowman (the Bowmans) appeal from the trial court's holding and judgment that a deed from the Bowmans to James Howard Bowman and Lizzie Bowman was not a conditional delivery.

Appellee filed her complaint for divorce against appellant in the Chancery Court at Shelbyville, Tennessee. She also named as defendants her son and daughter-in-law, Elliott and Becky Bowman (the Bowmans), alleging they conspired with appellant in having appellee make "certain conveyances—of certain assets to [the Bowmans] under the pretense that [the Bowmans] would be caring for [appellant and appellee] for the remainder of their lives as consideration to support said conveyances," but that the Bowmans "have failed and/or refused to honor the arrangement." Plaintiff prayed that the court declare the conveyance to the Bowmans "rescinded, revoked and/or null and void."

Following a bench trial, the court found that the deed to the "homeplace," which consisted of approximately 325 acres, had been made, executed and delivered by the Bowmans, and that the "homeplace" should be sold by the Clerk and Master at public auction and the proceeds divided one-third to appellant and two-thirds to appellee.

■ The Bowmans appeal from the trial court's finding that there had been an unconditional execution and delivery by them to appellant and appellee of the deed to the "homeplace." They continue to insist that delivery was conditional.

We are of the opinion, following our consideration of the entire record, that the evidence preponderates in favor of the trial

court's finding that the delivery of the deed was unconditional.

Over a period of time appellant and appellee conveyed the "homeplace" to the Bowmans. The Bowmans began having marital problems and, in order to insure that the "homeplace" stayed in the family, they executed a deed to appellant and appellee. W. Nowlin Taylor, an attorney practicing in Bedford County drew the deed and witnessed the Bowmans' execution of the deed and notarized their signatures. He testified the deed was delivered to appellant, J.H. Bowman, that J.H. Bowman later returned the deed to him for safekeeping, and that to his knowledge delivery of the deed was unconditional and there was no discussion of any condition upon which the deed would be returned.

Both of the Bowmans testified that delivery of the deed was conditional, that they were having marital problems and that appellant and appellee did not want Becky Bowman to have the home place in the event the Bowmans divorced and that if the Bowmans resolved their marital problems, the deed would be returned. The Bowmans testified that their marital problems had been resolved and that the condition for returning the deed had been met.

The bulk of the testimony that the deed was conditional came from Elliott Bowman. The trial court, while not specifically stating that Elliott Bowman was not a credible witness, did state: "It is really hard getting the truth out of these people." The trial court also stated during the testimony of Becky Bowman that

the questions that are being asked are not hard questions and these parties are supposed to be the ones that have controlled this and kept books, and you know, they become vague on important issues. They know all about certain things, but when you get down to an important issue and they don't know. So, you know, that's all a part of the demeanor of the witness and you all know I have to take all of that into consideration.

The court also stated that it "seemed" as if Elliott Bowman was "hiding things" during his testimony.

The question of whether or not the delivery of the deed from the Bowmans to the appellant and appellee was conditional is a question of fact. The burden of proof is upon the Bowmans to show that the delivery was conditional. The trial court, after seeing and hearing the witnesses testify on this issue, found that the delivery was not conditional. Most, if not all, of the proof on this issue was oral testimony of witnesses.

The findings of the trial court which are dependent upon determining the credibility of witnesses are entitled to great weight on appeal. *Town of Alamo v. Forcum–James Co.*, 205 Tenn. 478, 483, 327 S.W.2d 47, 49 (1959). The reason for this is that the trial judge alone has the opportunity to observe the manner and demeanor of the witness while testifying. Indeed, the trial judge, on an issue which hinges on witness credibility, will not be reversed unless there is found in the record concrete and convincing evidence, other than the oral testimony of the witnesses, which contradicts the trial court's findings. *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn.App.1974).

We find nothing in this record to contradict the trial court's finding. The Bowmans' insistence that there was a conditional delivery of the deed to appellant and appellee is without merit.

Appellant, by his first issue, contends that "[t]he Trial Court erred in granting Plaintiff a divorce because there was insufficient testimony by Plaintiff and insufficient corroboration by Plaintiff's witnesses to support grounds for divorce alleged by Plaintiff."

Appellant correctly contends that a divorce should not be granted in the absence of evidence corroborating Plaintiff's testimony when it is reasonably practicable to secure such corroboration. *See Farrar v. Farrar*, 553 S.W.2d 741, 744 (Tenn.1977); *Fulford v. Fulford*, 156 Tenn. 640, 4 S.W.2d 350 (1928).

Appellant argues that the appellee's testimony was contradicted by almost all of the other witnesses. It is appellant's insistence that appellee was not in a position to observe his committing adultery. Appellee had suffered a massive stroke that left her partially paralyzed and she could not get out of bed by herself. Appellant argues that it was "physically impossible for her to have seen Mr. Bowman engaged in adulterous conduct during this time period."

■ This Court does not pass on the credibility of witnesses. Credibility is an issue for the trial court who saw and heard the witnesses testify and is therefore in the premier position to determine credibility. *See Early v. Street*, 192 Tenn. 463, 241 S.W.2d 531 (1951).

However, even if we discount appellee's testimony, there is other credible evidence in the record to support the trial court's award of a divorce to the appellee. The appellee had employed a private investigator who testified that she observed the appellant in the act of committing adultery. There were numerous other witnesses who corroborated the acts of cruel and inhuman treatment testified to by the appellee. The trial court properly granted appellee an absolute divorce. This issue is without merit.

■ Appellant's next issue is: "[T]he Trial Court erred in failing to make an equitable distribution of the parties' real and personal property."

In his brief, appellant focuses his argument on the division of the "homeplace." The court, after finding that the "homeplace" was vested in the appellant and appellee, ordered that it be sold and that the appellee receive two-thirds of the proceeds of the sale and the appellant one-third.

Tennessee Code Annotated, Section 36–4–121(c) enumerates several factors which the court "shall consider" in making an equitable division. They include the duration of the marriage, the age, physical and mental health, vocational skills, employability, earning capacity, estate, and the financial liabilities and financial needs of each of the parties. Tenn.Code Ann. § 36–4–121(c)(1–2).

The parties had been married for almost fifty years and at the time of the hearing appellee had suffered a massive stroke and was confined to bed or to a wheel chair. It was necessary that she have full-time help to meet her physical needs.

Taking the factors enumerated in Tennessee Code Annotated, Section 36–4–121(c) into consideration, we are of the opinion that the trial court properly awarded appellee two-thirds of the proceeds from the sale of the homeplace and the appellant one-third. This issue is without merit.

■ Appellant's next issue is: "[T]he Trial Court erred in denying the husband's motion to distribute the marital property prior to granting the divorce."

Tennessee Code Annotated, Section 36–4–121(a)(1) provides that the trial court "may, ... prior to any determination as to whether it is appropriate to order the support and maintenance of one party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just."

Prior to the the passage of Chapter 682, Public Acts of 1988, which amended Tennessee Code Annotated, Section 36–4–121(a), the mandatory language "shall" was used and there was no discretion on the part of the trial court if asked to make a distribution of property prior to determining fault and support. Chapter 682, Public Acts of 1988 amended the language to provide that the trial court "may", giving the trial court discretion to make a distribution prior to finding fault. However, even prior to the amendment, the trial court was not required to divide the marital property months before the case was set for trial as requested by the appellant.

Appellant fails to show that the trial court abused its discretion in failing to make a distribution of the marital property several months prior to the hearing, and we find nothing in the record to show an abuse of the trial court's discretion.

■ The appellant argues that marital fault is not to be considered in making an equitable division of the marital property.

We agree. *Fisher v. Fisher*, 648 S.W.2d 244, 246–247 (Tenn.1983).

We find nothing in this record to show that a division of the marital property was based upon the marital fault of the appellant, and the appellant has failed to carry his appellate burden of showing that the trial court based its decision upon fault. *Capital City Bank v. Baker*, 59 Tenn.App. 477, 493, 442 S.W.2d 259, 266 (1969). This issue is without merit.

■ By his next issue, appellant argues that "[t]he Trial Court erred in denying J.H. Bowman's motion for a mental examination of Lizzie Bowman."

Tennessee Rule of Civil Procedure 35.01 permits the court in which an action is pending to order a party to submit to a mental examination when the mental condition of that party is in controversy.

On 14 January 1988, Elliot Bowman filed a motion requesting the court to order a physical and mental examination of the appellee, Lizzie Hall Bowman.

At that time an answer had not been filed by the appellant. However, appellant was represented at the hearing on the motion by Attorney Rondal T. Wilson. At the hearing, the court found that the parties were in agreement that a mental and physical examination should be made of the appellee. The court determined that Dr. Fred D. Ownby was best suited to conduct such an examination to which the parties agreed. The agreement entered on 27 January 1988 was signed by Rondal T. Wilson as attorney for the appellant.

The appellant was not satisfied with Dr. Ownby's examination and later moved the court for a second examination. He argues in his brief that Dr. Ownby was not qualified to conduct the examination. However, he raised this issue only after he was dissatisfied with Dr. Ownby's examination, even though he had agreed on 27 January 1988 that Dr. Ownby should conduct the examination.

The appellant argues that, absent the second mental examination he requested, "... the lower Court and all of the parties involved cannot be certain that it was the true intention of Lizzie Hall Bowman to divorce her husband...." He does not support this allegation by any citation to the record. The record shows that the appellee testified in open court while on a hospital bed that it was her intention to divorce her husband. She testified in great detail as to names, dates and places, and witnesses. She also testified regarding the financial transactions between the parties and their business practices. She testified regarding the conveyance of real property between the parties and their children. She testified for several hours. She was vigorously cross-examined by counsel for the appellant and counsel for the Bowmans. Following all of this, the trial court found "that the complainant, Lizzie Hall Bowman, although in ill health, was competent to prosecute her action for divorce in this cause."

The trial court did not commit error in denying the second request for a mental examination, especially in light of the appellant's agreement that Dr. Ownby was to conduct the initial examination. This issue is without merit.

■ Appellant's fifth issue is: "[T]he Trial Court erred in denying J.H. Bowman's first and second Motions to Terminate his Support Obligation."

Appellant filed his first motion to terminate support on 22 April 1988. Following a hearing, the motion was denied. Appellant then filed a motion to rehear, which was also denied.

■ Tennessee Code Annotated, Section 36–5–101(a)(1), provides that the court *may*, upon the application of either party, decree an increase or a decrease of alimony upon the showing of a substantial and material change of circumstances. It is not sufficient to simply show a change of circumstances. The change must be "substantial and material." The change must affect the obligor spouse's ability to pay or the obligee spouse's need for the alimony awarded. *See Threadgill v. Threadgill*, 740 S.W.2d 419, 422–423 (Tenn.App.1987).

Here, there had been a showing of a change of circumstances. Appellant had a

cancerous kidney removed on 15 April 1988. He is no longer gainfully employed. However, he does have the ability to pay the support awarded and the need of appellee has not diminished.

The trial court found, and the record supports, that while the appellant was unable to work, the parties had "assets" which could be liquidated for the appellee's support. The trial court also found that Elliott Bowman was "wasting" the marital estate.

While there was a change of circumstances, the change was not substantial or material insofar as the ability of the appellant to pay and the needs of the appellee. The record fully supports the trial court's finding that there were assets which could be liquidated and from which support could be paid. There is no merit to this issue.

■ We are of the opinion, however, that Mr. Bowman's ability to pay spousal support will not continue indefinitely. He is unable to work and, if he is forced to liquidate all of his assets in order to pay spousal support, he soon would have nothing from which to support himself. We are therefore of the opinion that the spousal support should terminate no later than one (1) year from the date of this opinion. During that period, the "homeplace" should have been sold and the appellee will have funds out of which to support herself.

■ Appellant's next issue is: "[T]he Trial Court erred in granting Lizzie Bowman's motion for an income Assignment."

Appellant argues that income assignments from income received by the appellant are not authorized as a part of the division of marital property. We deem it unnecessary to address this argument.

We think the record is clear that the income assignment was awarded to appellee in response to her motion requesting that the court compel the appellant to make the support payments awarded to her.

It was within the trial court's discretion to award an income assignment. The trial court found that the appellee wife had a need and that the appellant had the ability to pay. Also, the appellant admitted in his sworn statement that he was living with his grandson and that his grandson was providing all of appellant's support. The trial court had the authority to award support out of the appellant husband's property. The trial court found that the appellant was not making the support payments ordered by the trial court and that the appellee wife continued to have a need for support. Under the circumstances, it was appropriate for the court to award the appellee an income assignment. This issue is without merit.

■ The appellant's seventh issue is: "[T]he trial court erred by ordering J.H. Bowman to pay a portion of Lizzie Bowman's attorney's fee."

The appellant argues that "[t]he undisputed authority in this State mandates that attorney's fees are to be provided only after a showing of a lack of resources." We do not think the appellate courts of this state have adopted such a rule. Appellant has failed to cite any case which so holds, and we are unable to find such a case.

■ Under ordinary circumstances, if the wife is financially able to procure counsel, there is no occasion for the court to fix the amount of her attorney's fee. Attorney's fees should be a matter of contract between the attorney and client. Where the wife is awarded alimony in solido in an amount that will adequately cover her needs and attorney's fees, there is no occasion for the court to fix a fee. *Ligon v. Ligon*, 556 S.W.2d 763, 768 (Tenn.App. 1977).

> The right to an allowance of legal expenses is not absolute. It is conditioned upon a lack of resources to prosecute or defend a suit in good faith. This rule is to enable the wife, when destitute of means of her own, to obtain justice and to prevent its denial. If a spouse does not have separate property of her own which is adequate to defray the expenses of suit, certainly she should not be denied access to the courts because she is unable to procure counsel.

*Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983) (citation omitted).

**570**

We are of the opinion from the review of the record that the appellee has or will have funds out of which to pay her attorney and that the awarding of attorney's fees in this case is unnecessary to enable her to "obtain justice." Appellee was awarded a judgment against the appellant in the amount of $32,931.30 as alimony pendente lite in arrears. She was awarded $500.00 per week as alimony for her support and maintenance until such time as the Clerk and Master sold the "homeplace" of the parties and at that time she would receive two-thirds of the net sales price from the sale of the "homeplace." We are of the opinion that there is no need for the court to fix a fee. *Ligon v. Ligon*, 556 S.W.2d 763 (Tenn.App.1977).

On remand, the decree of the trial court will be amended to order that each party shall pay his/her attorney's fee. This issue is sustained.

By his next issue, the appellant insists: "[t]he Trial Court erred in refusing to recognize the conditional nature of the deed purporting to convey the homeplace from Elliott and Becky Bowman to J.H. Bowman and Lizzie Bowman."

We have previously discussed this issue under the issue presented by the Bowmans and found it to be without merit.

By his ninth issue, the appellant insists: "[T]he Trial Court erred in refusing to recognize the resulting trust of the homeplace in favor of Elliott Bowman and Becky Bowman."

We find nothing in this record to show that the appellant and appellee created a trust in favor of the Bowmans. A resulting trust may be created when a legal estate is disposed of or acquired but the intent of the parties is that the beneficial interest is not to go with the legal title. 89 C.J.S. Trusts § 102 (1955). Proof of the trust must be "clear, cogent and convincing." *Sanderson v. Milligan*, 585 S.W.2d 573, 574 (Tenn.1979). We find nothing in this record to show that a resulting trust was created. This issue is without merit.

We have considered each of the issues raised and find them to be without merit, except for the issue concerning the attorney's fees.

It therefore results that the judgment as modified by this Court, is affirmed and the cause remanded to the trial court for the entry of judgment in accordance with the opinion of this Court, for the collection of costs, which are assessed one-third to the appellant James Howard Bowman, one-third to the appellants Elliott and Becky Bowman, and one-third to the appellee, and for any further necessary proceedings.

TODD, P.J., and KOCH, J., concur.