IN THE COURT OF APPEALS OF TENNESSEE


IN THE MATTER OF:                    ) C/A NO. 03A01-9611-JV-00369
                                     )
    MICHAEL LYNN SHIPLEY             )
    BEVERLY ANN SHIPLEY              )
    TIFFANY ALEITHA SHIPLEY          )
    FRANK MICHAEL SHIPLEY,           )
        Children under the age)
        of eighteen years,          )
                                     )
                                     )
                                     )
STATE OF TENNESSEE                   )
DEPARTMENT OF                        ) APPEAL AS OF RIGHT FROM THE
CHILDREN'S SERVICES,                 ) GREENE COUNTY JUVENILE COURT
                                     )
        Petitioner-Appellee,        )
                                     )
                                     )
                                     )
v.                                   )
                                     )
                                     )
                                     )
                                     )
RALPH MICHAEL SHIPLEY,               )
                                     ) HONORABLE JAMES D. CARTER,
        Defendant-Appellant.        ) JUDGE


For Appellant                        For Appellee

T. WOOD SMITH                        JOHN KNOX WALKUP
Greeneville, Tennessee               Attorney General & Reporter
                                     Nashville, Tennessee

                                     DOUGLAS EARL DIMOND
                                     Assistant Attorney General
                                     General Civil Division
                                     Nashville, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                                    Susano, J.

1

This is a termination of parental rights case under the new Adoption Code.[1]  Following a bench trial on July 17, 1996, the court terminated the parental rights of Ralph Michael Shipley ("Father")[2] with respect to his minor children, Michael Lynn Shipley (DOB: 9/20/87), Beverly Ann Shipley (DOB: 10/28/88), Tiffany Aleitha Shipley (DOB: 3/29/90), and Frank Michael Shipley (DOB: 2/3/91).  Father appealed.  He argues that the evidence preponderates against the trial court's determination that multiple grounds existed for the termination of his parental rights.

I.  *Standard of Review*

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness that we must honor "unless the preponderance of the evidence is otherwise."  Rule 13(d), T.R.A.P.  "The scope of review for questions of law is de novo upon the record of the [trial court] with no presumption of correctness."  **Ganzevoort v. Russell**, 949 S.W.2d 293, 296 (Tenn. 1997).

II.  *Law and Analysis*

We commence our analysis by observing what is

---

[1]Chapter 532, Public Acts of 1995, effective January 1, 1996, as amended by Chapter 1054, Public Acts of 1996, effective May 15, 1996.

[2]The children's mother, Alice Shipley, had earlier surrendered her parental rights.

well-established: a parent has a fundamental right to the care, custody and control of his or her child. ***Stanley v. Illinois***, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, it is likewise clear that this right is not absolute; it may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute. ***Santosky v. Kramer***, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

The trial court found -- expressly predicating its findings on clear and convincing evidence -- that it was in the subject children's best interest to terminate Father's parental rights and to award their custody to the State of Tennessee, Department of Children's Services. It based its decision to terminate, again by a finding of clear and convincing evidence, on three basic grounds:

> That [Father] has abandoned [the] child[ren] in that [he] has willfully failed to visit or to engage in more than token visitation for four (4) consecutive months immediately preceding the filing of this petition prior to incarceration;
>
> That the child[ren] [have] been removed by order of a court for a period of six (6) months; the conditions which led to the removal of [the children] still persist; other conditions persist which in all probability would cause the child[ren] to be subjected to further abuse and neglect and which, therefore, prevent the children's return to the care of [Father]; there is little likelihood that these conditions will be remedied at an early date so that [the children] can be returned to [Father] in the near future; and the continuation of the legal parent and child relationship greatly diminishes the children's chances of early integration into a stable and permanent home;

3

That, prior to incarceration, [Father's] conduct was such as to show a wanton disregard for the welfare of his children;

The statutory authority for the grounds relied upon by the trial court can be found in the Code, as follows:

T.C.A. § 36-1-113

(a) the chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

\* \* \*

(c) Termination of parental or guardianship rights must be based upon:
(1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
(2) That termination of the parent's or guardian's rights is in the best interests of the child.

\* \* \*

(g) Termination of parental or guardianship rights may be based upon any of the following grounds:
(1) Abandonment by the parent or guardian, as defined in [T.C.A.] § 36-1-102, has occurred;

\* \* \*

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) or guardian(s), still persist;

4

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent(s) or guardian(s) in the near future; and
(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

\*     \*     \*

T.C.A. § 36-1-102

As used in this part, unless the context otherwise requires:
(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

\*     \*     \*

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child.

\*     \*     \*

(C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;

\*     \*     \*

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive

5

months, to visit or engage in more than token
visitation;

* * *

A. *Lack of Visitation*

At the time of the hearing below, Father was serving a
sentence of imprisonment at the Brushy Mountain State Prison in
Petros.  He had been incarcerated continuously since December 8,
1994, and was incarcerated when the State filed its petition to
terminate on May 3, 1996.

The trial court found that Father had "willfully failed
to visit [his] children," *see* T.C.A. § 36-1-102(1)(E), "for four
(4) consecutive months immediately preceding [his]
incarceration."  T.C.A. § 36-1-102(1)(A)(iv).  In this
connection, the individual who supervised Father's visitation
during the period from August 1, 1994, to December 8, 1994,
testified as follows:

> Q. Ms. Woody, you said that there had been
> some visits after the children came into your
> care, the Department's care, in most recent
> time, and that he slept during a couple of
> those; right?
>
> A. Yes.
>
> Q. How long did those visits last?
>
> A. The ones that we were attending, there was
> [sic] two in August and two in September.
> The one in August, of course, was during the
> summertime when the kids were out of school.
>
> Q. So those would have been three hours?
>
> A. Three hours.

6

Q. And the others would have been two hours?

A. Two hours, yes.

Q. And which two did he fall asleep during?

A. I'll tell you, I believe it was the first -- first two, but I will look. Let's see, 8/1 of '94; 8/1 of '94, visit held at park, 12:00 to 3:00 p.m.; Mr. Shipley attended, however, he did sleep on the picnic table for most of the visit.

On 8/8/94, visit held at the park, 12:00 to 3:00 p.m. Again, Mr. Shipley did attend, however, he did -- he did report he was tired and slept on the picnic table for most of the visit again.

＊　　＊　　＊

Q. Okay. Go ahead.

A. Let's see, the next one was 9/15 of '94, visit held -- the last one was 9/29 of '94. The visit, again, held 3:00 to 5:00 p.m. He did attend, however, laid on the table away from the children. One of the children approached him and asked him to come and play, but he said he did not feel like it.

Q. Now, being the thorough case worker that you are, I'm sure you inquired as to why he was tired and sleepy during those August visits; right?

A. Yes, I did.

Q. And what did he tell you?

A. He said he was not feeling well and that his hip hurt.

Q. So basically, illness and a hip problem is what he was complaining of, feeling ill?

A. Yes.

Q. And did you have any evidence that he was not feeling poorly?

A. Anything that I observed or that someone had told me?

Q. Anything you observed?

A. No.

7

Q. And during the two September visits, you stated that he remained away from the children for part of that visit; is that accurate?

A. Yes.

Q. And did you inquire about that?

A. Yes. He stated he was not feeling well.

Father did not dispute his inattention to the children during these visits. He tried to justify his conduct by stating that discs in his back were inflamed and were "putting pressure on the nerves and I couldn't hardly walk." He "explained" his failure to visit on other occasions during the critical four-month period by stating that he "was on the run" and "hiding again" because new criminal charges had been placed against him and he was trying to avoid capture.

The trial court pointed out that Father had not mentioned a disc problem to Ms. Woody, the witness whose testimony is quoted above. It is obvious from the transcript of the trial judge's remarks following the hearing that he did not believe Father's testimony with respect to his back problem. A trial court is in the best position to assess the credibility of witnesses; therefore, such determinations are entitled to great weight on appeal. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn.App. 1991). His second reason for not visiting -- because he "was on the run" from law enforcement -- even if true, is a problem of his own making. As such, it can hardly serve as a legal basis for his failure to visit. He could have visited had he chosen to do so; he chose not to.

8

As described by Ms. Woody, Father's visitation was "perfunctory" in nature. *See* T.C.A. § 36-1-102(1)(C). It was "token visitation" at best. ***Id.***

The evidence does not preponderate against the trial court's findings regarding Father's "willful[] fail[ure] to visit." *See* T.C.A. § 36-1-102(1)(E). Those findings show, clearly and convincingly, that there was an "abandonment" of the subject children by a failure to visit, such as to justify termination under T.C.A. § 36-1-113(g)(1) and T.C.A. § 36-1-102(1)(A)(iv).

B.  *Remaining Grounds for Termination*

The trial court found two other bases for terminating Father's parental rights. It found clear and convincing evidence of the basis for termination found at T.C.A. § 36-1-113(g)(3)(A)(i)-(iii), and clear and convincing evidence of "wanton disregard for the welfare of [his] child[ren]" prior to his incarceration. *See* T.C.A. § 36-1-102(1)(A)(iv).

The subject children had been in the care of the State since September 3, 1992. When placed in the State's care, the children were, approximately, ages 5, 4, 2, and 7 months. By the time of the hearing below they were, respectively, approximately ages 8, 7, 6, and 5. We believe that the continuation of the parent and child relationship "greatly diminishes the child[ren]'s chances of early integration into a stable and permanent home." *See* T.C.A. § 36-1-113(g)(3)(A)(iii). Their

9

mother surrendered her parental rights prior to the hearing below. Their father was in prison -- for the third time. He had recently had a parole hearing, out of which came a recommendation that parole consideration be continued for another year. If he serves his full sentence, he will be released in March, 2000. With time off for good behavior, he would be released in the middle of 1999. His parole is uncertain. The proof was clear and convincing that the children in this case cannot rely upon the availability of Father to provide them "a stable and permanent home." *Id*. There is "little likelihood" that the unsavory conditions described below "will be remedied at an early date so the child[ren] can be returned to [Father] in the near future." *See* T.C.A. § 36-1-113(g)(3)(A)(ii).

There was compelling evidence that prior to his incarceration, Father had a drug and alcohol problem. In fact, Father admitted that it was this problem that led to his violent conduct toward his former wife -- the mother of these children -- which in turn prompted the trial court to place the children with the State in 1992. There was also evidence that while undergoing counseling for his drug and alcohol addiction or abuse, he was still using these substances. His counselor recommended inpatient treatment when he reported to her in the late winter of 1994 that he had passed out from drinking the night before. He failed drug screens in July, 1993, May, 1994, and September, 1994. In the year before his incarceration, he resisted the suggestion that he attend meetings of Alcoholics Anonymous. His drug and alcohol counselor closed his case in December, 1994, concluding that he was just "going through the motions."

10

The record even contains evidence from which one could reasonably conclude that Father was still using drugs and abusing alcohol in prison. When interviewed there on January 25, 1996, Father was evasive about the subject. In response to the interviewer's comment -- that, of course, he wasn't using these substances in prison -- he said, "Well, who says I don't."

By his own admission, Father has engaged in criminal conduct to the extent that he now finds himself in prison for the third time. His most recent criminal activity took place while he supposedly was trying to put his life in order so that he could again have the care and custody of his children. This, coupled with his drug and alcohol problems, is very significant evidence that all of the conditions for termination set forth in T.C.A. § 36-1-113(g)(3)(A)(i)-(iii) were shown in this case. All of this conduct also shows "a wanton disregard for the welfare of [his] child[ren]" prior to his incarceration. *See* T.C.A. § 36-1-102(1)(A)(iv).

### III. *Conclusion*

The evidence before us does not preponderate against the trial court's findings of fact supporting termination. The evidence is clear and convincing that termination of Father's parental rights is in the best interest of the children. There is also clear and convincing evidence of the three bases for termination relied upon by the trial court.

The judgment of the trial court is affirmed.  Costs on appeal are taxed to the appellant.  This case is remanded to the trial court for enforcement of the judgment and the collection of costs assessed below, all pursuant to applicable law.


_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.

13