IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief August 8, 2002

## EDWARD KEITH GRAY
v.
## JOHNSON MOBILE HOMES OF TENNESSEE, INC.
A/K/A JOHNSON HOMES AND FLEETWOOD HOMES OF TENNESSEE,
INC. AND GREEN TREE FINANCIAL SERVICING CORPORATION

**Appeal from the Chancery Court for Hardeman County**
**No. 12298     Dewey C. Whitenton, Chancellor**

---

**No. W2001-01982-COA-R3-CV - Filed March 26, 2003**

---

This is a contract case. The buyer contracted to purchase a mobile home. After the home was delivered, the buyer inspected it and found it to be in unsatisfactory condition. The buyer complained to the seller and then to the manufacturer, each of whom attempted to remedy the problems. The buyer found the repairs to be unacceptable and revoked his acceptance of the mobile home. The buyer sued the seller, the manufacturer, and the finance company. The buyer settled with the finance company. The seller became insolvent and did not appear at the trial. Consequently, the buyer went to trial against the seller and the manufacturer, with only the manufacturer present. The trial court found for the buyer and apportioned the damages between the seller and the manufacturer. On appeal, the buyer argues that the trial erred in apportioning the damages between the seller and the manufacturer, and in awarding him insufficient damages. The manufacturer argues that the trial court erred in denying its motion for involuntary dismissal, and in awarding damages against the manufacturer. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Scottie O. Wilkes, Memphis, Tennessee, for appellant, Edward Keith Gray.

Evan Nahmias, Memphis, Tennessee, for appellee, Fleetwood Homes of Tennessee, Inc.

# MEMORANDUM OPINION[1]

In January 1998, Edward Keith Gray ("Gray") contracted with Johnson Homes, Inc. ("Johnson Homes") to purchase a double-wide mobile home, a site for the home, and delivery of utilities for the site, for a total purchase price of $54,885.18. Gray paid a down payment of $2,725. The home was manufactured by Fleetwood Homes of Tennessee, Inc. ("Fleetwood"). Financing was provided by Green Tree Financial Servicing Corporation ("Green Tree").

Gray did not obtain financing for the purchase until April 1998. In May 1998, Johnson Homes delivered and assembled the mobile home.

In June 1998, Gray inspected the mobile home and found it unacceptable. Gray found that the home had damaged siding, unlevel floors, defective paneling, broken pipes, and that it leaked water. Gray complained about the defects to Johnson Homes, who attempted unsuccessfully to remedy them. Gray then complained about the defects to Fleetwood, who also attempted unsuccessfully to fix the problems. Gray remained unsatisfied.

In December 1998, Gray revoked his acceptance of the mobile home, pursuant to section 47-2-608(1)(a) of the Tennessee Code Annotated.[2] Gray then sued Johnson Homes, Fleetwood, and Green Tree under sections 47-2-714 and 47-2-715 of the Tennessee Code Annotated.[3]

On July 13, 2001, Green Tree and Gray entered into a consent order permitting Green Tree to repossess the mobile home. As part of the agreement, Green Tree and Gray dismissed with prejudice all claims they had against one another.

On February 27, 2001, the bench trial was held. By that time, Johnson Homes had become insolvent and did not appear at the trial. While only Fleetwood was present, Gray proceeded to trial against both Johnson Homes and Fleetwood.

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]Section 47-2-608(1)(a) provides: "The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured." Tenn. Code Ann. § 47-2-608(1)(a) (2001).

[3]Section 47-2-714 provides for buyer's damages after breach, and section 47-2-715 permits recovery of damages resulting from nonconformity of goods, including incidental and consequential damages. *See* Tenn. Code Ann. §§ 47-2-714 and -715 (2001). Buyer's complaint requested consequential damages, return of the down payment, expenses incurred, and payment of costs associated with the lawsuit.

At the trial, Gray testified that his monthly payments on the new mobile home were to be $482.17. Gray moved out of his previous home in January 1998, expecting to move into the new mobile home that month. After Gray's financing was resolved, Johnson Homes delivered and assembled the mobile home in May 1998.

Gray did not inspect the home until the third week of June 1998. At that time he found no sheetrock on the walls, a buckled floor, wrinkled carpet, a hole in the ceiling, leaking gables, and incomplete siding installation. Gray contacted both Johnson Homes and Fleetwood to complain about the defects. Both worked on the home "quite a few times" between May and December 1998, but neither resolved Gray's concerns. Consequently, in December 1998, Gray revoked his acceptance of the mobile home. The evidence showed that Gray made payments to Green Tree in June 1998, December 1998, January 1999, and February 1999 in an aggregate amount of $1,764.04. After Gray moved out of his previous home in January 1998, he apparently moved into his mother-in-law's home for a period of time, and then rented a home for $375 a month from March 1998 through February 2000. Gray also testified that he incurred lost wages as a result of dealing with the problems with the mobile home, totaling between $1,000 and $1,200. Overall, Gray sought damages totaling $13,564.04.

The trial court also heard the testimony of a carpenter who saw that some floors in the mobile home were buckled and that there was a leak in a bedroom. In addition, Gray proffered the testimony of an expert witness who had visited the mobile home. He testified that the floor was buckled in the kitchen, that water had pooled around the back door, and that there was mildew on the ceiling where water had apparently leaked into the structure.

During the hearing, the trial judge asked Gray's attorney to separate the claim for damages between Johnson Homes and Fleetwood. Gray's attorney acknowledged to the trial judge that he understood what he was requesting, but gave no further response to the trial court's directive.

At the conclusion of the hearing, the trial court found for Gray and ordered Johnson Homes to pay Gray $6,507 and Fleetwood to pay Gray $1,882, for a total damage award of $8,389. Gray moved for a new trial, which the trial court denied. From this order, Gray now appeals.

In his appeal, Gray argues that the trial court erred in apportioning fault between Johnson Homes and Fleetwood, and erred in awarding damages in an amount less than those claimed by Gray. Fleetwood argues that the trial court erred in declining to grant its motion for involuntary dismissal, and in calculating the damages awarded against Fleetwood.

Since this case was tried by a trial court sitting without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); Tenn. R. App. P. 13(d). "The amount of damages awarded by the [t]rial [c]ourt is a question of fact," and therefore is subject to a presumption of correctness, unless the evidence preponderates against the award." ***Hall v. City of Gatlinburg***, No. E2001-01470-COA-R3-CV, 2002 Tenn. App. LEXIS 104,

at *13 (Tenn. Ct. App. Feb. 6, 2002). Regarding witness credibility, "trial judges, unlike appellate judges, have an opportunity to observe the manner and demeanor of the witness while they are testifying." **Mitchell v. Archibald**, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998) (citing **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)) Thus, because the trial court is best situated to make credibility determinations, these are afforded great deference on appeal. **Id.** (citations omitted). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. **Campbell**, 919 S.W.2d at 35.

Gray first argues that the trial court erred in apportioning fault between Johnson Homes and Fleetwood. Gray notes that Johnson Homes and Fleetwood failed to plead the affirmative defense of comparative fault, and argues from this that the trial court's award should have been joint and several. This is inapplicable, however, because Gray's claims did not sound in tort but rather in contract. Moreover, during the hearing, the trial court asked Gray's counsel to apportion his claim for damages between Johnson Homes and Fleetwood, and Gray's attorney acknowledged the request but made no objection to the apportionment of damages. After the judgment of the trial court, however, Gray's counsel moved for a new trial on the grounds, inter alia, that the trial court limited Gray's case by requiring him to apportion fault between Johnson Homes and Fleetwood. The trial court denied the motion.

Here, Gray sued two parties, and offered no testimony regarding which of the two parties was responsible for the problems with the mobile home. During the trial, Gray made no objection to apportionment of the damages. After the trial, he cited no authority to the trial court to support his argument that the trial court should not have apportioned damages, and he cites no such authority to this Court on appeal. Considering all of the circumstances, we cannot conclude that Gray has demonstrated on appeal that the trial court erred in apportioning the damages between Johnson Homes and Fleetwood.

Gray argues next that the trial court erred in failing to award him the full amount of damages he sought. Gray claimed damages of $7,875 for rent and storage at $375 per month for the time period from March 13, 1998 to February 1, 2000. In total Gray sought $13,564.04 in damages. The evidence, however, showed that, because of the delay caused by Gray's financing and the delay in inspecting the mobile home, the earliest Gray could have moved into the mobile home was May 1998. Gray revoked acceptance of the mobile home in approximately December 1998. Moreover, Gray's testimony indicated that he expected to pay $482.17 per month for living accommodations had the mobile home not been defective. Under all of these circumstances, we must conclude that the evidence does not preponderate against the trial court's decision not to award Gray the full amount of damages he sought.

Fleetwood argues on appeal that the trial court erred in failing to grant its motion for involuntary dismissal pursuant to Rule 41.02 of the Tennessee Rules of Civil Procedure. Fleetwood argues that Gray's failure to inspect the home after delivery and assembly prevents him from establishing his *prima facie* case against Fleetwood, that is, that the defects were Fleetwood's

responsibility.[4]  First, the record does not reflect that Fleetwood moved for involuntary dismissal. Second, there was ample evidence from which the trial court could have concluded that at least some of the defects in the mobile home were caused by the manufacturer.  Under these circumstances, we find no error in the trial court's decision not to dismiss Gray's claims against Fleetwood.

Fleetwood argues next that Gray failed to proffer evidence of incidental and consequential damages as permitted in section 47-2-715 of the Tennessee Code Annotated.[5]  In the case at bar, Gray sought a total of $13,564.04 in damages.  Gray testified that he paid $2,725 in down payment, $7,875 in rent and storage fees, $1,764.04 in mortgage payments, and that he lost $1,000 to $1,200 in wages while dealing with the problems with the mobile home.  Fleetwood argues that Gray sought damages for a time period beyond that for which Fleetwood should be liable, and that Gray should not be permitted to recover for rent payments when he would have been paying mortgage payments for the mobile home had it not been defective.  At the conclusion of the trial, Gray was awarded a total of $8,389 in damages, $1,882 of which was allocated to Fleetwood.  The trial court, however, did not indicate that any portion of the damage award was for incidental or consequential damages or the time period for the damages; rather, the trial court simply allocated liability for the damages between the defendants.  Apart from the down payment,[6] the remaining damages can be attributed to mortgage payments, storage fees, and lost wages.  For the relevant time period, the award of $1,882 against Fleetwood is supported by sufficient evidence.

---

[4]Fleetwood relies on *Paskell v. Nobility Homes, Inc.*, 871 S.W.2d 481 (Tenn. 1994), and *Winter v. Smith*, 914 S.W.2d 527 (Tenn. Ct. App. 1995), for the proposition that "it is the Plaintiff's burden to show when a breach occurred and that each party should be responsible for its own breach," and also that if Fleetwood breached its warranty, the breach occurred upon delivery of the home.  The *Paskell* case cites statutory law stating that a breach occurs when delivery is made; however, the case itself focuses on when a plaintiff's cause of action accrues, not on liability when a buyer fails to timely inspect merchandise after delivery.  Similarly, *Winter*, a lengthy case involving contractor indemnification, offers only the general statement that each party should be responsible for its own wrongdoing.  Neither case supports Fleetwood's argument that Gray failed to meet his *prima facie* burden.

[5]Section 47-2-715 of the Tennessee Code Annotated states:

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include:

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Tenn. Code Ann. § 47-2-715 (2001).

[6]It is undisputed that Johnson Homes and not Fleetwood would be liable for the down payment.

Finally, Fleetwood argues that Gray cannot recover for incidental or consequential damages because the contract Gray signed includes a disclaimer of such damages. Fleetwood, however, does not point to the portion of the record that demonstrates that such a disclaimer was part of Gray's contract. Because the disclaimer was apparently not made part of the record, it cannot be considered on appeal. Therefore, the award of damages against Fleetwood must be affirmed.

The decision of the trial court is affirmed. Costs are taxed equally to appellant, Edward Keith Gray, and his surety, and to appellee, Fleetwood Homes of Tennessee, Inc., for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE