IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2004

# DEBRA LYNN LAWSON GORMAN v. RICHARD EUGENE GORMAN

**Appeal from the Circuit Court for Hamblen County**
**No. 95-CV-457     Kindall T. Lawson, Judge**

**No. E2003–02879-COA-R3-CV        Filed August 12, 2004**

This is a post-divorce custody case wherein the Trial Court denied the Father's petition for change of custody and denied the Mother's petition for payment of uncovered medical expenses and attorney fees. Both parties appealed. We have determined that the Trial Court did not err and we affirm its decision.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

Christopher P. Capps, Morristown, for Appellant Richard Eugene Gorman.

J. Randall Shelton, Morristown, for Appellee Debra Lynn Lawson Gorman.

**OPINION**

**I.**

The parties were divorced by judgment entered April 1, 1996. The final decree of divorce incorporated the parties' marital dissolution agreement (MDA). At the time of the divorce, neither child born of the marriage had reached the age of majority. The MDA provides that the parties would exercise "joint custody" of both children, with Mother being the primary physical custodian of their daughter Mattea (DOB: March 22, 1994), and Father the primary physical custodian of their son Matthew (DOB: March 24, 1985).

On December 5, 2001, Mother filed a petition for change of custody, alleging that the parties' son, Matthew, had moved from the Father's home to the Mother's home. The Father filed an answer and counter-petition requesting that the Court establish him as the primary residential custodian of

both Matthew and Mattea. Both parties submitted proposed parenting plans to the Court. At the time of the hearing, Matthew had attained the age of majority, and so the issue regarding custody and visitation involved only Mattea.

After the hearing, the Trial Court adopted Mother's parenting plan, and incorporated it into its final judgment. Father argues on appeal that the Trial Court failed to make findings of fact which requires this Court to vacate the Trial Court's judgment regarding the designation of Mother as primary residential parent. Father also argues that the Trial Court abused its discretion in refusing to grant him more visitation time with the minor child. Mother argues on appeal that the Trial Court abused its discretion in not awarding her attorney fees and not ordering the Father to pay all of the minor child's uncovered medical expenses. Mother also seeks her attorney fees on appeal.

## II.

The issues before the Court are:
1. Whether the Trial Court erred in its decision regarding Father's petition for change of custody and award of visitation time.
2. Whether the Trial Court erred in its decision regarding the parties' division of responsibility for the unpaid medical expenses of their minor child.
3. Whether the Trial Court erred in its decision regarding the denial of the Mother's request for attorney fees.

## III.

Custody and visitation cases are among the most important cases that courts consider. Their chief purpose is to promote the best interests of the child. *Steen v. Steen*, 61 S.W. 2d 324, 327 (Tenn. Ct. App. 2001). Custody cases are very often factually driven and hinge on factors such as the demeanor and credibility of the witnesses, which is a matter that is peculiarly within the province of the Trial Court. *Bowman v. Bowman*, 836 S.W. 2d 563, 567 (Tenn. Ct. App. 1990). Accordingly, we review these decisions *de novo* on the record with a presumption that the Trial Court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569-570 (Tenn.2002). When the Trial Court makes no specific findings of fact, however, we must review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn.1997).

In considering a petition to modify custody from one parent to another parent, the threshold issue is whether a material change in circumstances has occurred after the initial custody determination. Factors to consider are whether a change has occurred after the entry of the order sought to be modified; whether the change was known or reasonably anticipated when the order was established; and whether the change is one that affects the child's well-being in a meaningful way. If a material change in circumstances has occurred, then it must be determined whether the modification is in the child's best interest according to the factors enumerated in Tenn. Code Ann. § 36-6-106. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569-570 (Tenn. 2002).

In this case, the Trial Court did not make a specific finding as to whether a material change of circumstances occurred subsequent to the divorce decree and MDA. It could certainly be argued in this case that such a change did not occur, but neither party presents this argument. Each proposed parenting plan sought changes in the arrangement set forth in the MDA and followed by the parties. Consequently, we will proceed to the issue of whether the Trial Court's modification of the custody and visitation arrangement reflected the best interests of the child. *See Steen v. Steen,* 61 S.W.3d 324, 327 (Tenn.App.2001).

The factors enumerated in Tenn. Code Ann.§ 36-6-106, which guide the courts in determining whether modification of custody is in a child's best interests, provide in pertinent part, as follows:

> (1) The love, affection and emotional ties existing between the parents and child;

> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;. . .

> (4) The stability of the family unit of the parents;

> (5) The mental and physical health of the parents;

> (6) The home, school and community record of the child;

>          *         *         *

> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

The MDA signed by the parties at the time of the divorce provides as follows regarding visitation:

> The parties shall have reasonable visitation with the child not in his or her physical custody and the parties shall cooperate with each other to ensure that the children spend time with each other, and with the non-custodial parent.

The parties shall alternate and/or divide the holidays with the children. Each party shall have two weeks of summer vacation time with the child not in his/her physical custody.

The parties agreed that during the five years from the divorce in 1996 until Mother's filing of her petition in 2001, the parties followed a schedule which provided Father visitation time with Mattea every other weekend. Father testified that in addition to alternate weekends, he usually took a week of vacation during spring break, and the week of his birthday, and during those weeks he kept both the children. Mother testified that Father never called or contacted Mattea in between his custodial weekends, and that he never requested any more visitation time with her than what he had. Father testified that he had contacted Mother "several" times and requested more time with Mattea, to which the Mother did not agree.

Mother's proposed parenting plan maintains the schedule allowing Father alternate weekends, and increases his parenting time to include every Tuesday evening from 5:00 to 7:00. Among other things, it provides for alternating holidays, alternating spring breaks, and grants Father two weeks with Mattea in June and two weeks in July.

The written proposed plan submitted to the Trial Court by Father is styled "temporary parenting plan" and provides that "the father shall be responsible for the child from 6:00 p.m. Sunday to 6:00 p.m. Friday every other week and. . .all week every other week" with "Mother to have additional time as may be arranged between the parties." However, at the hearing Father testified that he was requesting "that she [Mattea] spend fifty percent of the time with [him], and fifty percent of the time with her mother." He testified that he was requesting physical custody alternating between the parties every week. He further testified on direct examination as follows regarding the proposed weekly alternating visitation schedule:

> Q: You recognize – Do you recognize that starting like – like today with that type of an arrangement might well be traumatic for this child?
> A: Yes.
> Q: But is that – is that the situation that you want to work toward, with regard to your daughter?
> A: Yes.

After hearing the witnesses' testimony, the Trial Court adopted Mother's proposed parenting plan. On appeal, Father raises the following issue, quoted verbatim from his brief: "whether the Trial Court erred in failing to make findings of fact justifying its designation of Mother as the primary residential parent or as to visitation." We disagree with Father's assertion that the Trial Court failed to make findings of fact in this case; but even if this assertion were correct, we also disagree with his argument that the absence of findings of fact by a Trial Court *requires* this court to vacate the lower court's judgment. "When the Trial Court makes no specific findings of fact, however, we must review the record to determine where the preponderance of the evidence lies."

*Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn, 2002), citing *Ganzevoort v. Russell*, 949 S.W. 2d 293, 296 (Tenn. 1997).

The transcript of the hearing reveals that the Trial Court found as follows in relevant part:

> All right. Well, here's what I think about it. It appears to the court that both parents are good parents, love the child, and do the best they can with everything. The problem seems to be that there was one of those agreements some years back that said nothing. . .it didn't say anything specific. And as is most usually the case, it didn't work out too well. And so things have not been working too well, apparently.
>
> The mother's had primary custody of the child these years. And apparently has done an excellent job. I – you know, the child is making four-O [straight As in school], and no problems and – or anything. I'm not saying the father hadn't, also. I certainly don't go – But I think that under the proof, the evidence shown here, that the mother would be the primary parent.
>
> The father would – and I'd – again, I've heard that there is a request for visitation, but as I indicated at the outset, frankly, I don't think – And I think studies have shown, and its been generally held, that the child needs a home base, a place that is home, and not to be moved about too much. And I think that, on the basis of what I understand in the facts of this case, all that – The father should have parenting time from Friday at 5:00 to Sunday at 6:00 every other week, and Tuesday from 5:00 to 7:00 every week.

The Supreme Court has noted on several occasions that "the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge." *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001); *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn.1988). Based on our review of the record, the applicable statutory factors and circumstances, we find that the evidence does not preponderate against the Trial Court's decision and we therefore affirm the Trial Court's order in this regard.

Mother raises the issue as to the appropriate division of Mattea's uncovered medical expenses between the parties. The record shows that at the time of the hearing, Mattea was covered by three separate health policies: Father's, her stepfather's (Mother has since remarried), and also by TennCare. The MDA provides that Father will be responsible for 60% of Mattea's uncovered health care expenses, and Mother will be responsible for the remaining 40%. After hearing Mother's argument that Father should have to pay a higher percentage of these expenses, the Trial Court ordered that the same arrangement, the 60/40 split, continue. We find that the evidence does not preponderate against the Trial Court's decision and we therefore affirm the Trial Court's order in this regard.

The Mother argues that the Trial Court erred by not awarding her attorney fees and further requests an award for her attorney fees on appeal. The decision whether to award attorneys' fees is within the sound discretion of the Trial Court and will not be disturbed upon appeal unless the evidence preponderates against such a decision. *Kincaid v. Kincaid*, 912, S.W. 2d 140, 144 (Tenn. Ct. App. 1995). We find that the Trial Court's decision regarding attorney fees is appropriate and the evidence does not preponderate against the Trial Court's decision. We affirm the Trial Court's decision regarding attorney fees and further decline to award attorney fees to the Mother on appeal.

We affirm the judgment of the Trial Court in its entirety, and remand the case for collection of costs below. Costs on appeal are assessed against the Appellant, Richard Eugene Gorman.

_____
**SHARON G. LEE, JUDGE**