IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 3, 2002 Session

## ANGELA D. SIEFKER v. GARY C. SIEFKER

**Appeal from the Circuit Court for Davidson County**
**No. 98D-3861      Muriel Robinson, Judge**

---

**No. M2001-01458-COA-R3-CV - Filed November 1, 2002**

---

This is a post-divorce case regarding alimony and child support. The husband was ordered to pay alimony *in futuro*, and child support for the parties' minor child. Later, the husband was terminated from his job, and his income dropped substantially. The husband fell behind in his support payments. Consequently, he sought a reduction in alimony and child support. Noting that the husband retained substantial assets, the trial court found that the husband was able to fulfill his obligations, denied his request for reduction in alimony, ordered him to pay his arrearage in alimony and child support, and awarded the wife reasonable attorney's fees. Child support was terminated because the minor child had graduated from high school by the time of the trial. The husband now appeals. We affirm, finding no abuse of the trial court's discretion, in view of the termination of the husband's child support obligation, the wife's continued need for alimony, and the husband's retention of significant assets.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

HOLLY K. LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

D. Scott Parsley, Nashville, Tennessee, for the appellant Gary C. Siefker.

Phillip Robinson, Nashville, Tennessee, for the appellee Angela D. Siefker.

**OPINION**

On July 9, 1999, Plaintiff/Appellee Angela D. Siefker ("Wife") was granted a divorce from Defendant/Appellant Gary C. Siefker ("Husband"), ending a twenty-three year marriage. The parties had two children, the older of which had reached majority at the time of the divorce. Among other obligations relating to the divorce decree, Husband was ordered to pay Wife $2,000 per month alimony *in futuro*, as well as $1,782 per month in child support for the parties' minor child.

At the time of the divorce, Husband was employed as a sales manager at a car dealership. In this capacity, he earned $168,580 in 1999, and $138,474 in 2000. On February 2, 2001, Husband was terminated from his job for "mismanagement of inventory." After a time, Husband found employment as a new truck salesman at a Chevrolet dealership. Husband testified that he hoped to earn $50,000 in his first year at the dealership. Husband made his monthly support payments in a timely manner until December 2000. From January through May, 2001, Husband paid $8960 of the $18,910 in support that he owed for that period. Husband did not designate the money sent to Wife during this period as alimony or child support payments.

On October 30, 2000, Husband filed a petition to reduce his alimony on the basis of a substantial and material change in circumstances. On April 3, 2001, Husband amended his petition to seek a reduction in both alimony and child support, again, based on a substantial and material change in circumstances.

On June 14, 2001, the trial court held a hearing on Husband's petition to reduce his child support and alimony payments. At the hearing, the evidence showed that Husband owned a race car worth $23,000, a motorcycle valued at $14,000, and over $47,000 in his 401(k) Plan. The testimony also showed that Husband received a $14,000 tax refund on April 3, 2001, a time when he was in support arrears. Wife's income remained approximately the same as it was at the time the parties divorced. Additionally, Wife moved from the family home into an apartment, reducing her monthly housing obligation by $200. Although she realized a $37,000 gain on the sale of the home, Wife testified that she used the money to move and to pay monthly expenses.

At the conclusion of the hearing, Husband's child support payments were terminated because the parties' minor child had graduated from high school.[1] Regarding the alimony, the trial court found that Wife had a continued need for the alimony[2] and that Husband was able to fulfill his financial obligations, considering his substantial assets and the fact that his earning capacity remained significantly greater than Wife's earning capacity. The trial court denied Husband's petition to reduce his monthly alimony payments. In view of Husband's available assets, the trial court declined Wife's request for a finding that he was voluntarily underemployed, concluding that such a finding was not necessary. To determine the amount of Husband's arrearage, the trial court allocated the $8,960 Husband paid from January through May, 2001, to child support. The child support due during that period of time was $8,910. The $50 overage was then applied to the alimony arrearage. The alimony due during January through May, 2001, totaled $10,000, leaving a total arrearage in alimony of $9,950. The trial court ordered Husband to pay the $9950 in alimony arrearage, as well as $2500 in attorney's fees. The trial judge noted that Husband's assets could be

---

[1]The record does not indicate the birth date of the couples' daughter or the date she reached majority. The trial judge, however, granted the petition to reduce child support "due to the fact that the child has emancipated as of the graduation date."

[2]The trial court held that Wife "has reduced her lifestyle and does not have standard living [sic] previously enjoyed during the marriage and should not be in a worse position after the divorce . . . ." Deposition testimony indicated that Wife's income had remained at approximately $28,000 per year, the amount she earned at the time of the divorce.

sold to pay the arrearage, and ordered that the race car be sold and the proceeds applied to the arrearage. Any remaining arrearage was ordered to be paid off at a rate of $200 per month in addition to the regular monthly alimony obligation. In light of Husband's testimony that he paid all of his other bills before making his alimony and child support payments, and that he was current on all his other obligations and had not liquidated any major assets, the trial court held Husband to be in civil contempt of the trial court's orders, and ordered him incarcerated until he purged himself.[3] Husband now appeals.

On appeal, Husband argues that the trial court erred in refusing to reduce his monthly alimony support obligation and in holding him in contempt of court. Husband contends that the dramatic reduction in his income resulted in a decreased ability to pay his obligations, and that Wife's need for the alimony had decreased. Regarding child support, Husband asserts that the findings of the trial court require additional clarification to determine the date on which the termination of child support took effect, and that the modification should reduce any arrearage. Husband argues that a modification in both alimony and child support should have been granted retroactive to the date of his October 2000 petition to modify.

Wife asserts that Husband's decrease in income is his own fault and that he "set upon a course of conduct to renege on his support agreement . . . ." Wife notes that Husband has assets he can liquidate to fulfill his obligations, and that the termination of his child support obligation makes him further able to meet his alimony payments. Wife maintains that she has a continued need for support, citing her reduced standard of living as well as her salary, which has remained essentially unchanged since the time of the divorce. With regard to the child support determination, Wife argues that the trial court's instructions were clear, and that the trial court properly awarded full child support payments up to the time the remaining minor child graduated from high school.

Because this case was tried without a jury, the standard of review is de novo, with a presumption of correctness of the findings of the trial court, unless a preponderance of the evidence shows otherwise. Tenn. R. App. P. 13(d); *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). Questions of law are reviewed de novo, with no presumption of correctness. ***Burlew v. Burlew***, 40 S.W.3d 465, 470 (Tenn. 2001). Modification of an alimony award is factually driven,

[3]The trial court noted that Husband testified that he hurriedly entered into the divorce agreement "so he could move on," and observed:

> . . . [F]rom that time forth he has pretty much been on a mission to reduce this alimony. That's very evident. By his own testimony he's paid other bills instead of paying the alimony. He readily admitted that. And he also stated for the record that he is current with everything but his child support and alimony payment. And he stated, evidently in the discovery and I've got it written down here and underlined, that he will not pay the child support and alimony.
>     . . . .
> He's had the wherewithal to pay the alimony. Based on the statements, he has refused. The Court feels this is willful. He'll be taken into custody until he complies with this order.

calling for a careful balance of many factors. ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001) (citations omitted). The trial court is given wide latitude, and its decision will not be disturbed unless it is "not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." ***Id.*** Therefore, the decision of the trial court will not be disturbed unless it evidences an abuse of discretion. A trial court abuses its discretion when it reaches a decision against logic that causes a harm to the complaining party or when the trial court applies an incorrect legal standard. ***Eldridge v. Eldridge***, 72 S.W.3d 82, 85 (Tenn. 2001) (citing ***State v. Shirley***, 6 S.W.3d 243, 247 (Tenn. 1999)).

Husband first argues that his current financial situation warrants a decrease in his alimony obligation. In order to modify an alimony obligation, a substantial and material change in circumstances, unforeseen at the time of the divorce decree, must occur. ***Watters v. Watters***, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). A substantial and material change in circumstances is one that significantly affects either the obligor's ability to make the payments or the obligee's need for support. ***See Bowman v. Bowman***, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991). The party seeking the reduction in payments has the burden of proving the changed circumstances. ***Seal v. Seal***, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990). A significant decrease in income may not constitute a substantial and material change in circumstances if the obligor owns assets that can be liquidated and the obligee's need for the payments has not diminished. ***See Bowman***, 836 S.W.2d at 569. Once a substantial and material change in circumstances has occurred, the trial court must consider the factors enumerated in section 36-5-101(d) of the Tennessee Code Annotated to determine the modification to be made. ***See Bogan v. Bogan***, 60 S.W.3d 721, 732 (Tenn. 2001). While the trial court has wide discretion in modifying alimony obligations, the two primary considerations are the payor spouse's ability to pay and the payee spouse's continued need for the money. ***Cranford v. Cranford***, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989).

On appeal, Husband argues that the change in his financial circumstances is substantial and material, and warrants a downward modification of his alimony obligation. Wife claims that Husband is unable to support his contention that his income has decreased to an estimated $50,000 per year, and asserts that he is voluntarily underemployed. The trial court specifically declined to find that Husband was voluntarily underemployed, but found that Husband had the financial "wherewithal" to make the alimony payments because he was employed in his business field and had assets that could be liquidated in order to fulfill his obligations.

Husband estimated his income at the time of the hearing to be approximately $50,000 per year, a significant decrease from his prior income level, which ranged from approximately $138,000 to $168,000. The record contains no evidence to contradict Husband's assertion. This proof, however, must be weighed against the fact that Wife, without question, has a continued need for the alimony, still making significantly less than Husband's reduced income. Moreover, Husband's child support obligation has terminated because the parties' minor child graduated from high school. Most importantly, at the time of the hearing, Husband retained substantial assets that were untouched, including a race car worth approximately $23,000, a motorcycle worth approximately $14,000, a 401(k) Plan of approximately $47,000, and a bank account of approximately $6,600. The trial court considered Husband's testimony that while he fell behind in his support payments, he kept all his

other obligations current. Viewing the evidence presented to the trial court, we cannot conclude that the trial court abused its discretion in declining to modify Husband's monthly alimony obligation. We also affirm the trial court's finding that Husband was in contempt of the order to pay alimony, considering Husband's testimony that he kept all of his other obligations current and did not liquidate assets such as his race car and motorcycle, while he fell behind in his support payments.

Husband next argues that the trial court's ruling with regard to the child support modification was confusing. Husband also indicates in his brief that the trial court should have decreased his child support payment either for the period from October 30, 2000, when he filed his complaint for reduction in alimony, or in the alternative, from April 3, 2001, when he amended his complaint to include a reduction in child support obligations.

Under Tennessee law, a petitioner is only entitled to a retroactive modification in child support after the date of filing for the modification. *See* Tenn. Code Ann. 36-5-101(a)(5) (2001)[4]; *see also Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991).

Husband's petition for modification in child support was filed on April 3, 2001. At that time, there were two monthly child support payments due before the minor child graduated from high school and his obligation to make those payments ended. In view of the factors discussed above in connection with Husband's petition to decrease his alimony payments, we decline to reduce or terminate the child support payments prior to the trial court's hearing on Husband's petition, which took place shortly after the child graduated from high school. The trial court's decision to terminate the child support payments as of the date of the child's graduation from high school is therefore affirmed.

The decision of the trial court is affirmed. Costs are taxed to the Appellant, Gary C. Siefker, and his surety, for which execution may issue if necessary.

_____

HOLLY K. LILLARD, JUDGE

---

[4]Section 36-5-101(a)(5) of the Tennessee Code Annotated states:

Any Order for child support shall be a judgment entitled to be enforced as any other judgment of a Court of this state . . . . Such Judgment shall not be subject to modification as to any time period or any amount due prior to the date that an action for modification is filed . . . .

Tenn. Code Ann. § 36-5-101(a)(5) (2001).