IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 20, 2004 Session

## BARBARA JEAN CAIN v. CHARLES CURTIS CAIN

**Direct Appeal from the Chancery Court for Madison County**
**No. 57391      Joe C. Morris, Chancellor**

---

**No. W2003-00563-COA-R3-CV - Filed March 3, 2004**

---

Wife filed for divorce alleging Husband was guilty of inappropriate marital conduct. Trial court granted Wife an absolute divorce, ordered a martial property distribution, and awarded wife alimony and attorney's fees. Husband appeals. We affirm the distribution of marital property, modify the award of attorney's fees, vacate the requirement to provide life insurance and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part; Modified in part; Vacated in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Charles Curtis Cain.

Charles A. Spitzer, Jackson, Tennessee, for the appellee, Barbara Jean Cain.

### OPINION

On May 25, 1962, Charles Curtis Cain (Husband) and Barbara Jean Cain (Wife, or collectively with the Husband as the Parties) married. On May 18, 2000, Husband and Wife separated. The Parties had three children, all of which were adults at the time of separation. One day later, Wife filed for an absolute divorce alleging that Husband was guilty of inappropriate marital conduct. On December 4, 2000, the trial court entered an order of temporary support. The order required Husband to pay $1,000.00 a month in temporary support and to continue paying all of the monthly expenses that he had been paying including the house note, second mortgage, all insurance, telephone, utilities, sanitation fee, cable TV, car note, gas, auto insurance, and any uncovered medical bills. The divorce was heard before the Madison County Chancery Court on August 26, 2002.

On October 7, 2002, the trial court entered its findings:

In this divorce case, the Court finds that the Wife should be awarded an absolute divorce, in that the Husband has been guilty of inappropriate marital conduct. The parties have been married for forty (40) years, and all of their minor children are now adults. . . . [D]uring the pendency of this divorce, the Wife has remained in the marital residence. [Wife] works part-time as a clerical assistant, and [Husband] has been employed by a construction company for the last thirty (30) years, and is a Senior Vice President and Appraiser.

The Wife is 58 years of age and suffers from Meniere's Disease and Rheumatoid Arthritis. [Wife] is in need of alimony *in futuro*, and the Husband is in a position to pay from his net monthly income of $5,521,63. The Wife earned $9,000.00 in the past calendar year.

The Court is of the opinion that [Husband] should pay to [Wife] the amount of Two Thousand Two Hundred ($2,200.00) per month in alimony *in futuro*, and in addition, [Husband] should obtain a life insurance policy in an amount sufficient to guarantee this alimony obligation, with [Wife] being the irrevocable beneficiary. In addition, [Wife] is awarded alimony *in solido* for her attorney's fees and suit expenses.

Wife is awarded the following:

| Asset | Value |
|-------|-------|
| 1. Martial Residence | $124,484.21 |
| 2. Manulife 401(k) as of 8/19/02 | $121,244.18 |
| 3. Toyota Van | $ 18,000.00 |
| 4. Furnishings in marital residence | $ 10,000.00 |
| TOTAL: | $273,728.39 |

Husband is awarded the following:

| Asset | Value |
|-------|-------|
| 1. Manulife 401(k) as of 8/19/02 | $121,244.18 |
| 2. H&M Construction Co., Inc. Executive Deferred Comp. Plan | $ 68,131.44 |
| 3. Equitable Flexible Premium Variable Life Insurance Policy | $ 56,336.18 |
| 4. Toyota Avalon | $ 20,000.00 |
| 5. Furnishings in marital residence | $ 2,000.00 |
| 6. State Farm Life Insurance Policy (Value remaining after Husband's withdrawal of cash value) | $ 927.93 |
| 7. State Farm Life Ins. Policy | $ 18,000.00 |
| TOTAL: | $286,639.73 |

In consideration of the division of the marital estate, the payment of alimony *in futuro*, and attorney's fees, the Court has taken into consideration this marriage of long duration, the Wife's present health condition and intermittent work history, along with the Husband's ability to pay. For all the forgoing reasons, the Court feels that this is a fair a[n]d equitable property division.

On February 21, 2003, the trial court entered its final decree of divorce, which incorporated the findings of the court but further specified that Husband "shall be required to secure life insurance in the amount of $300,000 . . . [i]n order to secure [his] alimony obligation." Additionally, in the final decree, the court stated that Husband "shall pay alimony *in solido* to the [Wife] for the attorney fees and suit expenses, which she has incurred . . . while being represented by [Attorneys] in the amount of $25,711.93." Husband timely filed his notice of appeal.

## Issues Presented

Husband appeals and raises the following issues, as we restate them, for our review:

1.      Whether the trial court erred in awarding wife her attorney's fees as alimony *in solido*.

2.      Whether the trial court erred in its distribution of marital property.

3.      Whether the trial court erred in requiring Husband to maintain life insurance in an amount necessary to secure his alimony obligation.

## Attorney's Fees

Husband argues that the trial court erred in awarding attorney's fees because the amount of attorney's fees and expenses incurred were excessive, there was no proof presented by Wife as to the amount of attorney's fees, and Wife had sufficient assets with which to pay the attorney's fees. Accordingly, we will first address whether it was error for the trial court to award fees and then determine if that award was excessive. The trial court's award of attorney's fees "to a party in a divorce proceeding is within the sound discretion of the trial court and will not be disturbed upon appeal unless the evidence preponderates against such a decision." *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992) (citing *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988); *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988)).

Husband contends that there was no proof presented by Wife as to the amount of attorney's fees. However, "a trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be." *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988). Therefore, even if there was no

proof presented by Wife as to the amount of attorney's fees, the trial court did not abuse its discretion in awarding attorney's fees.

Husband also contends that Wife had sufficient assets from which she could pay her attorney's fees. In making his argument, Husband refers the court to several sources of income from which Wife could pay her attorney's fees. First, at trial, Wife admitted that she had taken $25,000 from the parties' savings account prior to the separation. Second, Wife was receiving $1,000 a month in temporary spousal support in addition to having all of her bills paid. Third, Wife was earning around $850.00 a month at her work. Fourth, Husband points to all the assets that the Wife received in the distribution of marital property. In response, the Wife testified that, after the parties separated, she paid $7,500 as a retainer for her first attorney, $700 to terminate his services, $300 for an estimate on the parties' house, and two doctors' depositions. Wife further testified that, although Husband was ordered to pay Wife's medical insurance and uncovered medical bills, she was having to pay $300.00 a month in uncovered medical bills as a result of her recent breast surgery. "[T]rial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations." *Wells v. Tenn. Bd. Of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citing *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)). In this case, the trial court was able to hear both parties' testimony and did not err in its determination that the Wife did not have sufficient assets from which she could pay her attorney's fees.

During the opening statement at trial, Wife asked the court for an award of attorney's fees in the amount of $21,589.91. That amount was based upon $2200 of expenses that Wife allegedly incurred in getting documents from Husband, taking Mr. Cain's deposition, and the attorney's fees for taking the two doctors' depositions. However, there is no evidence in the record to support the court's award of $25,711.93 in attorney's fees. Accordingly, this Court modifies the award of attorney's fees to the amount originally requested, $21,589.91.

### Property Distribution

Husband contends that the trial court erred in its equitable distribution of marital property. An equitable distribution of marital property is not necessarily an equal one. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1996). Further, "trial courts are afforded wide discretion in dividing the interest of the parties . . . [and] the trial court's distribution will be given great weight on appeal." *Id.* (citing *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973)). Tennessee Code Annotated § 36-4-121(c) (2001) sets forth the factors to guide the trial court in its equitable distribution of marital property:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c).

Husband's argument is based upon four underlying alleged errors committed by the trial court. First, Husband argues that the trial court erred by not considering all of the above enumerated statutory factors. In it's findings and final decree of divorce, the trial court stated:

The parties have been married for forty (40) years, and all of their minor children are now adults. . . . [D]uring the pendency of this divorce, the Wife has remained in the marital residence. [Wife] works part-time as a clerical assistant, and [Husband] has been employed by a construction company for the last thirty (30) years, and is a Senior Vice President and Appraiser.
The Wife is 58 years of age and suffers from Meniere's Disease and Rheumatoid Arthritis. [Wife] is in need of alimony *in futuro*, and the Husband is in a position to pay from his net monthly income of $5,521,63. The Wife earned $9,000.00 in the past calendar year.
. . . .

In consideration of the division of the marital estate, the payment of alimony *in futuro*, and attorney's fees, the Court has taken into consideration this marriage of long duration, the Wife's present health condition and intermittent work history, along with the Husband's ability to pay. For all the forgoing reasons, the Court feels that this is a fair a[n]d equitable property division.

After our review of the record, we hold that the trial court considered all of the relevant factors in making its equitable property division.

Second, Husband argues that the trial court should have used $181,500 as the value of the parties' home rather than the $124,484.21 value found in the court's findings and final decree of divorce. At trial, there was testimony by both parties of the stipulated value of the home, $181,500.00. Further, the parties' first and second mortgage statements revealed a total mortgage debt of $46,115.50 and a $135,384.50 equity value in the home. Tennessee Code Annotated § 36-4-121(b)(1)(A) states "'[m]arital property' means all real and personal property . . . valued as of a date as near as reasonably possible to the final divorce hearing date." Accordingly, this Court holds that the equity value of the home, $135,384.50, should have been used in the court's distribution but such a modification from $124,484.21 to the equity value does not render the distribution of marital property inequitable.

Third, Husband argues that the trial court erred in its award of the Equitable Flexible Premium Variable Life Insurance Policy to him as marital property. Husband contends that this policy belonged to his employer for purposes of insuring Husband's life as an employee and should not be classified as a marital asset. However, the record reflects that Husband's name appears as the insured. Further, Husband testified at trial that although the face amount and death benefit on the policy would not be paid to him, the policy account value could. Accordingly, the trial court did not err in awarding the cash surrender value of the policy, $56,336.18, to Husband.

Fourth, Husband argues that the trial court erred when it did not include the $25,000 that Wife took from the parties' joint bank account in the distribution of marital property and that the court used the incorrect values in its award of personalty. As for the $25,000.00, the wife testified at trial that she used this money to pay for attorney's fees, doctors depositions, an appraisal, and doctor's bills. Even if this Court were to accept Husband's argument, the addition of $25,000 in Wife's award of marital property would not render the distribution inequitable. As for the personalty within the marital residence, Husband contends that there is no basis from the parties' testimony or the record for the values used by the court in its distribution. The trial court awarded Wife $10,000 whereas Husband was awarded $2,000. The proposed distribution, as urged upon this Court by Husband, would be $8,225 to Husband and $23,660 to Wife. Nevertheless, even if the court were to use the proposed values, the court's distribution would not be inequitable. Accordingly, the trial court did not err in its distribution of martial property.

## Life Insurance

Husband argues that the trial court erred in awarding the amount of life insurance to secure his alimony obligation without considering the cost of premiums. Following the trial of this matter, the trial court filed its findings which included a statement that Husband "should obtain a life insurance policy in an amount sufficient to guarantee this alimony obligation, with Ms. Cain being the irrevocable beneficiary." Husband then filed a motion for a clarification of the trial court's findings noting that the court failed to specify the amount of the policy. In the final decree, the court established the amount of the life insurance policy at $300,000. Husband contends that he was never afforded the opportunity to present evidence of the costs of the insurance ordered and his ability to pay. Tennessee Code Annotated § 36-5-101(g) (Supp. 2003) allows the court to "direct either . . . part[y] to designate the other party and the children of the marriage as beneficiaries under any existing policies insuring the life of either party . . . or the purchase and maintenance of life insurance." This statute "specifically left the determination of whether to order a party to procure insurance for the benefit of the other party . . . to the discretion of the trial court." *Young v. Young*, 972 S.W.2d 386, 392 (Tenn. Ct. App. 1997). We note that Wife did not seek this relief in her complaint or in her opening argument. Had she done so, this would have put Husband on notice and perhaps shifted the burden to him to present the evidence which he now contends he was denied to present. We believe that fairness dictates that this cause be remanded to the trial court for the parties to present evidence on the limited issue of life insurance.

Husband also argues that the trial court erred in requiring him to obtain a new life insurance policy rather than placing his wife as a beneficiary on an existing policy. Tenn. Code Ann. § 36-5-101(g) provides support for Husband's argument by providing that "[t]he court may direct either or both parties to designate the other party . . . as beneficiaries under any existing policies insuring the life of either party." Tenn. Code Ann. § 36-5-101(g) (Supp. 2003). On remand, in the event that the trial court awards Wife life insurance, the trial court should consider whether Husband has any existing life insurance to which Wife could be named as a beneficiary.

## Conclusion

In light of the foregoing, we affirm the trial court's distribution of marital property. Further, we affirm the award of attorney's fees but modify the amount of the attorney's fees award to $21,589.91. The trial court's award of life insurance is vacated and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellant, Charles Curtis Cain, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE