# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 15, 2012 Session

## MATTHEW BECK RAMSEY v. MICHELLE MIN RAMSEY

**Direct Appeal from the General Sessions Court for Wilson County**
**No. 2010-DC-87      John Thomas Gwin, Judge**

---

**No. M2011-02483-COA-R3-CV - Filed January 25, 2013**

---

This appeal arises from a divorce action in which the trial court named Mother the primary residential parent and entered a permanent parenting plan limiting Father's parenting time to one hundred and eight (108) days a year. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

William Barry Wood, Nashville, Tennessee, for the appellant, Matthew Beck Ramsey.

Julie M. Robinson, Lebanon, Tennessee, for the appellee, Michelle Min Ramsey.

### MEMORANDUM OPINION[1]

#### *Background*

On April 23, 2006, Michelle Min Ramsey ("Mother") and Matthew Beck Ramsey ("Father") were married. The parties only child, a daughter, was born in 2009. Father is

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

employed by the State of Tennessee Department of Labor and provided health insurance for the minor child at the time of trial. Further, at the time of trial, Father was in his last year of law school. Mother has a masters degree and is employed as an auditor for the Tennessee Regulatory Agency.

On June 3, 2010, Father filed a complaint for absolute divorce in the Wilson County General Sessions Court. On June 17, 2010, an agreed *pendente lite* order was entered providing, in pertinent part, that the parties would alternate parenting time on a weekly basis, that Mother would have a psychiatric evaluation, and that Father would have exclusive possession of the marital home. On July 21, 2010, Mother filed an answer and counter-complaint for divorce. Thereafter, on August 16, 2010, the trial court ordered that the parties continue to divide parenting time on a week-to-week basis. The trial court further found that Father's decision to go forward with law school was appropriate. Father answered Mother's counter-complaint for divorce on August 26, 2010.

On August 23, 2011, a trial was conducted in this matter. On October 11, 2011, the trial court entered a final order in which it found that both parties were entitled to a divorce, granted a divorce to both parties, and named Mother the primary residential parent. In analyzing the relevant factors under Tennessee Code Annotated section 36-6-106 (2010), the trial court found that the parties were on equal footing as to most of the factors, but that the following issues weighed against Father: (1) Father's attendance at night law school; (2) Father's attendance at sporting events; (3) Father's trips to visit his paramour; (4) that the *pendente lite* order had disrupted the child; and (5) that both parties were stable, but Father's family had become fractured as a result of the divorce. Further, the trial court adopted Mother's proposed parenting plan, with some modifications, which provided Father one hundred and eight (108) days of annual parenting time. Thereafter, Father timely filed a notice of appeal to this Court.

### *Issues Presented*

On appeal, Father argues that the trial court erred by naming Mother the primary residential parent and by awarding Father only one hundred and eight (108) days of annual parenting time. Additionally, Mother requests attorney's fees incurred on appeal pursuant to Tennessee Code Annotated section 27-1-122, because Father's appeal "was frivolous or taken solely for delay."

### *Standard of Review*

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not

reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, however, with no presumption of correctness. Tenn. R. App. P. 13(d). Our review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

Trial courts have wide discretion to establish a parenting arrangement that is in the best interests of the child. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted). The trial court's judgment often turns on subtle factors which require the court to assess the credibility and demeanor of the witnesses. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). We will not substitute our judgment for that of the trial court on these matters. *Eldridge*, 42 S.W.3d at 88. Rather, we will disturb a trial court's decision regarding parental responsibility only if it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.*

***Discussion***

As this Court recently explained in *Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319 (Tenn. Ct. App. Oct. 24, 2012):

> There are currently two different statutes setting out non-exclusive lists of factors for the trial court to apply to help it reach the goal of determining a child's best interest. Tennessee Code Annotated § 36–6–106 applies to "cases requiring the court to make a custody determination. . . ." Tennessee Code Annotated § 36–6–404 requires that a permanent parenting plan be incorporated into "any final decree or decree of modification in an action for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child." A parenting plan must include a residential schedule, which designates in which parent's home the child will reside on different days, and the court must designate a "primary residential parent." In determining the residential schedule, the court is to consider a list of factors. Tenn. Code Ann. § 36–6–404(b).
>
> The trial court herein applied the factors in Tenn. Code Ann. § 36–6–106(a), which apply to custody determinations. Although the parenting plan statutes are applicable herein, the legislature's list of factors at Tenn. Code Ann. § 36–6–404(b) for the court to consider in determining a parenting plan and residential schedule are substantially similar to the factors set out in Tenn. Code Ann. § 36–6–106(a), and both allow for consideration of any other

factors the court deems relevant. In this case, as in most cases, the analysis and the result would be the same regardless of which set of factors is applied. To avoid confusion, we will refer in our discussion to the same set of factors as was applied by the trial court.

*Id.* at *6. In the case at bar, as was the case in *Thompson*, the trial court's analysis focused on the factors listed in Tennessee Code Annotated section 36-6-106(a).[2] Accordingly, our discussion will focus on the same set of factors.

In its final order, naming Mother as the primary residential parent and adopting

---

[2]Tennessee Code Annotated section 36-6-106(a) provides the following list of factors:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;
(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .
(4) The stability of the family unit of the parents or caregivers;
(5) The mental and physical health of the parents or caregivers;
(6) The home, school and community record of the child;
(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;
(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in [section] 39-15-401 or [section] 39-15-402, or child sexual abuse, as defined in [section] 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected to the evidence. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;
(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and
(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a)(1)-(10).

Mother's proposed permanent parenting plan with slight modifications, the trial court concluded as follows:

These parents share substantially equal love, affection and emotional ties with the child. Father voluntarily pursues more outside interests than does Mother, which interests take away from Father's voluntary parenting opportunities. These include night law school, attendance at sporting events, and trips to visit his paramour. [Tenn. Code Ann. § 36-6-106(a)(1).]

There is no significant difference in the parties' disposition to provide the child with necessities. Mother has clearly been the primary caregiver since the child's birth. Tenn. Code Ann. § 36-6-106(a)(2).

The child's life has primarily been disrupted by the Court's *pendente lite* Order. The Court finds that the maximum stability is available to the child in the continued care of the Mother. Tenn. Code Ann. § 36-6-106(a)(3).

The Court finds that both parents are stable. The Court finds that Mother's "acting out" behaviors were, as she testified, efforts to reunite the family at the time of Father's insistence upon seeing his paramour. Father's family, on the other hand, has become fractured over this very case. Tenn. Code Ann. § 36-6-106(a)(4).

The Court finds that both parties enjoy comparable physical and mental health. Tenn. Code Ann. § 36-6-106(a)(5).

The Court finds no credible evidence of any physical or emotional abuse to the child that would preponderate for or against either parents [sic] request for primary residential parenting. Tenn. Code Ann. § 36-6-106(a)(8).

The character and behavior of other persons who frequent the homes of the parents, and their interactions with the child, do not preponderate for or against either parent. Tenn. Code Ann. § 36-6-106(a)(9).

Father's family has become vehemently estranged over this case, to the point that the paternal grandfather will not visit with the child when his sisters are present. Father likewise denounces his aunts. Father is in his last year of law school, attending classes three nights weekly. Even with the unselfish efforts of the paternal grandparents to drive three (3) hours each way to Mt. Juliet to babysit, the arrangement is neither practical, nor in the best interests

-5-

of the minor child. Mother's past and potential for future performance of parenting responsibilities is superior to that of Father, and is consistent with the best interest of the child. Tenn. Code Ann. § 36-6-106(a)(10).

Father argues that his decision to complete law school and attend sporting events are factors that should weigh positively in his favor. Father further argues that the trial court's *pendente lite* order, and his decision to visit his paramour during the marriage, are factors that should at least be considered the fault of both parties. In sum, Father argues that the trial court erred in limiting his parenting time in light of the legislative preference to allow for maximum participation by both parents in the life of the child.[3] In response, Mother argues that Father's decision to take night classes in law school, attend sporting events, and visit his paramour during the marriage, resulted in his frequent absence in the child's life, and thus the trial court correctly considered them against Father in its analysis.

After thoroughly reviewing the record, we find no basis upon which to disturb the trial court's judgment. In arriving at its decision, the trial court considered, *inter alia*, the testimony of nine (9) witnesses, including: Mother; Father; the paternal grandfather; the paternal grandmother; two of the paternal aunts; the paternal grandfather's ex-girlfriend; and Mother's employer. Although the testimony regarding Mother and Father's parenting abilities was conflicting at times, when such conflicts arise, the trial court is in a superior position to evaluate the credibility and demeanor of witnesses. *See Burden v. Burden*, 250 S.W.3d 899, 905 (Tenn. Ct. App. 2007) (citing *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)). As a result, we give considerable deference to the trial court's findings of credibility and the weight to be given to the testimony. *Id.* The testimony in the record clearly shows that Father was frequently absent throughout most of the weeks in which he was responsible for the child. Despite these facts, Father points to nothing in the record, beyond the commendable efforts of the paternal grandparents to care for the child during his absence, that would otherwise support the result he seeks. Essentially, Father asks this Court to

---

[3]As recently amended, Tennessee Code Annotated section 36–6–106(a) currently provides, in pertinent part:

> In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)–(10), the location of the residences of the parents, the child's need for stability and all other relevant factors.

"Accordingly, Tennessee courts must now fashion custody arrangements so as to give each parent the maximum amount of time possible with the child, in accordance with the child's best interests." *Rountree v. Rountree*, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012) (footnote omitted).

reevaluate the evidence presented to the trial court and reach a different conclusion. We emphasize, however, that a trial court's decision regarding parental responsibility is reviewed for an abuse of discretion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). As such, we must affirm the trial court's ruling "'so long as reasonable minds can disagree as to propriety of the decision made.'" *Id.* at 85 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). Therefore, we decline Father's invitation to second-guess the trial court's discretionary decision in this matter. However, we have not foreclosed the possibility of modifying the current parenting plan should either party present evidence of a material change in circumstances warranting a modification. Instead, we conclude only that the present record does not support Father's assertions that the trial court's determination is not in the best interests of the child. Accordingly, we affirm the trial court's decision naming Mother the primary residential parent and awarding Father one hundred and eight (108) days of annual parenting time.

Lastly, we must address Mother's request for attorney's fees incurred on appeal. Mother seeks attorney's fees pursuant to Tennessee Code Annotated section 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). "[I]mposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable—which is rare." *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010) (citations omitted). Although we decided the issues adversely to Father in this matter, we are not persuaded that this appeal is frivolous or was taken solely for the purpose of delay. Therefore, we deny Mother's request for attorney's fees incurred on appeal.

### *Conclusion*

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this

appeal are taxed to the Appellant, Matthew Beck Ramsey, and his surety, for which execution may issue if necessary.


_____
DAVID R. FARMER, JUDGE