# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
April 16, 2013 Session

## JERRY DEAN HARKLEROAD v. LINDA ALTHEA TURNER HARKLEROAD

**Appeal from the Circuit Court for Washington County**
**No. 25576     Hon. Jean A. Stanley, Judge**

---

**No. E2012-01804-COA-R3-CV-FILED-MAY 10, 2013**

---

This appeal concerns a requested post-divorce modification of alimony in futuro.  Husband sought a reduction in his support obligation owed to Wife, alleging that he had not received a paycheck in two years and that Wife was eligible for Medicare and no longer in need of his assistance for health insurance coverage.  Following a hearing, the trial court reduced Husband's health insurance obligation but held that Husband failed to prove a material change in circumstances that necessitated a modification in the remainder of his support obligation.  Husband appeals.  We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Robert D. Arnold, Johnson City, Tennessee, for the appellant, Jerry Dean Harkleroad.

Steven R. Finney, Johnson City, Tennessee, for the appellee, Linda Althea Turner Harkleroad.

## OPINION

### I.  BACKGROUND

Jerry Dean Harkleroad ("Husband") and Linda Althea Turner Harkleroad ("Wife") were married on April 5, 1967.  Two children were born of the marriage and have since attained the age of majority.  Husband supported the family from income he received as the

sole stockholder and principal insurance agent of R.C. Hunter Insurance Agency ("the Company").  Husband and Wife (collectively "the Parties") sought a divorce after approximately 40 years of marriage.  Wife alleged that Husband had engaged in inappropriate marital conduct, while Husband alleged that Wife was "verbally and mentally cruel to him."  The trial court agreed with Wife.  In considering Wife's request for alimony, the court found that Wife was in "dire need of alimony . . . until the mortgage on her residence [wa]s paid off."  The court held that Wife was capable of earning between $14,000 and $16,000 per year and that Husband's income averaged $60,000 despite his assertion to the contrary.  In valuing the Company, the court stated,

> [Husband] now asks the [c]ourt to find that [the Company] is burdened by a loan to shareholders in the amount of [$105,515].  Simply put, these "loans" were made by the [C]ompany to [Husband] in lieu of a salary and were in reality income to [Husband].  It was his decision to be paid in this fashion.

By order entered on December 5, 2007, the court divided the marital estate and ordered Husband to submit $1,300 per month as alimony in futuro and to provide medical insurance for Wife as part of the support obligation.

On May 16, 2012, Husband petitioned for modification of his support obligation, alleging that there had been a material change in circumstances.  Husband stated that he had not received any income from the Company for two years, that he was reliant on Social Security, that he was unable to pay Wife's health insurance premiums and the remainder of the support obligation, that Wife had prolonged her mortgage obligation by refinancing, that Wife had never retained employment as directed by the court, and that Wife was drawing income from Social Security.  Wife filed a counter-complaint for contempt, alleging that Husband had failed to fulfill his support obligation.

The Parties each submitted a statement of income and expenses.  Husband reported a net loss of $1,574 per month, while Wife reported a net income of $146.19 per month.  A hearing was held before the court at which Husband and Wife testified.  Husband, who was 65 years old at the time of the trial, testified that he received $1,660 per month in Social Security benefits and retirement income but that he had not received income from the Company since 2009.  He noted that his reported income was $48,000 in 2006, $20,400 in 2007, $20,400 in 2008, and $5,100 in 2009.  Husband acknowledged that despite his lack of income, the Company paid his business expenses and funded personal loans over the course of several years.  He admitted that in the three years following the divorce, he loaned himself $106,000.  He insisted that the money that he received from the Company was used to pay

approximately $3,300 per month in health insurance premiums for Wife and his employee[1] and the additional $1,300 per month in support owed to Wife.

Husband testified that he attempted to repay the loans he received from the Company by cashing several certificate of deposits. He also borrowed approximately $34,000 from friends and family members. He explained that his indebtedness to the Company had reached approximately $292,000 by 2010. He acknowledged that the Company was valued at $268,000 but asserted that he still owed approximately $260,000 to the Company. He opined that if the Company were to declare bankruptcy, he would be required to pay income taxes on the forgiven loan. He asserted that if he, as the sole shareholder, forgave the loan without declaring bankruptcy, he would still be responsible for income taxes. He insisted that it was his intent to keep working in order to revive the Company.

Husband claimed that the $1,300 monthly obligation was intended to assist Wife in paying the mortgage on the marital residence. He stated that the mortgage would have been fulfilled in 2010 if Wife had not refinanced the amount remaining on the mortgage for an additional 30 years. He related that Wife had been unable to secure steady employment and refused to apply for disability benefits. He acknowledged that Wife had significant health issues but asserted that he also had significant health issues. He explained that he had undergone an operation for a hernia and that he was suffering from glaucoma and did not know whether his eyesight would improve or deteriorate.

Wife testified that she received approximately $782 in Social Security benefits. She stated that she still lived in the marital residence, which she refinanced in February 2008. She explained that she refinanced the mortgage because she was not employed at the time of the divorce. She related that she could not provide for herself and pay the mortgage with the monthly spousal support. She claimed that her mortgage obligation was reduced to $490 as a result of the refinancing.

Wife stated that she worked as a teacher's assistant from March until November 2008 and that she worked as a substitute teacher from November 2008 until May 2010. She explained that she was unable to continue working as a substitute teacher after she injured her back. She had several surgeries to repair the damage but never fully recovered. Relative to the costly insurance premiums, she stated that she intended to apply for Medicare and had researched supplemental policies, one of which would only cost $98 per month.

---

[1]Husband explained that he was unable to find a suitable individual policy for Wife and that his insurance carrier refused to cover Wife unless he also provided insurance for another employee.

Wife testified that she had always lived a frugal lifestyle but asserted that she needed the $1,300 in monthly spousal support. She acknowledged that the marital residence was worth approximately $204,000 but asserted that she did not want to sell her residence. She conceded that she had taken several vacations since the divorce. She claimed that she never spent much on her vacations, which were occasionally funded by her friends.

Wife's friend, Mary Langenbrunner, testified that she had known Wife for approximately ten years. She opined that Wife often capitalized on restaurant meal specials and purchased personal items from The Dollar Store.

Following the hearing, the court ordered Husband to pay $98 per month for Wife's supplemental health insurance policy. Relative to the remaining support obligation, the court acknowledged that the gross revenues of the Company had declined but held that Husband continued to borrow money from the Company, allowed the Company to pay a number of his expenses, and also received income from Social Security. The court further stated,

> Although [Husband] testified he received zero income from [the Company] in 2010 and only [$5,100] income in 2009, he continues to own and operate the agency. He has testified that he intends to continue to do so. As evidenced by the tax returns from [the Company], [Husband] has continued to take loans from the business for a total amount of [$106,000] through 2010. In the [o]rder of the [d]ivorce, this [c]ourt previously held that these "loans" were made by the company to [Husband] in lieu of salary and were in reality income to [Husband]. It was his decision to be paid in this fashion.

The court found that Wife also received less per month than what was imputed to her by the court despite her attempts to secure employment. In consideration of the foregoing, the court refused to reduce the $1,300 per month obligation and ordered Husband to remit an additional $400 per month until his arrearage was paid in full. This timely appeal followed.

## II. ISSUE

We consolidate and restate the issue raised on appeal as follows:

Whether the trial court abused its discretion in failing to reduce Husband's $1,300 per month spousal support obligation.

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

"[M]odification of a spousal support award is 'factually driven and calls for a careful balancing of numerous factors.'" *Wiser v. Wiser*, 339 S.W.3d 1, 11 (Tenn. Ct. App. 2010) (quoting *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). "Generally, the trial court's decision on whether to modify spousal support is not altered on appeal unless the trial court abused its discretion." *Id.* (citing *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999)). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S .W.3d 215, 223 (Tenn. Ct. App. 1999). "Consequently, when reviewing . . . an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (citations omitted).

## IV. DISCUSSION

Husband asserts that the trial court erred by refusing to reduce his support obligation when his entire estate had been dissipated to fulfill his support obligations and when his business no longer held any value. He notes that he had not reported any income from the Company since 2009. Wife responds that the trial court did not err in refusing to reduce the monthly support obligation. She claims that Husband's refusal to receive a salary in lieu of loans from the Company did not evidence a change in circumstances because he paid himself in that fashion at the time of the divorce.

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th edition, as

[a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced. Alimony is distinct from a property settlement.

Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. The type of alimony that is at issue in this case, alimony in futuro, is a long term form of spousal support that is typically awarded

> when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1). This type of alimony is awarded on a "long term basis or until death or remarriage of the recipient" spouse. Tenn. Code Ann. § 36-5-121(f)(1).

Awards of alimony in futuro "remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A); *see also Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991). "It is not sufficient to simply show a change of circumstances." *Bowman*, 836 S.W.2d at 568. Instead, "[t]he change must be substantial and material." *Id.* "[A] change in circumstances is considered to be 'substantial' when it significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan*, 60 S.W.3d at 728 (citing *Bowman*, 836 S.W.2d at 568). A change is not material if the change was "contemplated by the parties at the time of the divorce." *Wright v. Quillen*, 83 S.W.3d 768, 772 (Tenn. Ct. App. 2002). "A substantial and material change in circumstances does not automatically entitle the petitioner to a modification." *Id.* at 773. Rather, "the petitioning party must [also] demonstrate that a modification of the award is justified." *Id.*

Husband testified that he only received approximately $20,000 per year from the Company at the time of the divorce in 2007. While he had not reported any income from the Company in recent years, his previously reported income was almost entirely replaced by his Social Security and retirement benefits in the amount of $1,660 per month. Likewise, he continued to loan himself money from the Company in lieu of receiving a higher salary. In contrast, Wife's ability to work declined since the time of the divorce. Her Social Security benefits were also not commensurate with her imputed income at the time of the divorce.

-6-

With these considerations in mind, we conclude that the trial court did not abuse its discretion in finding that Husband failed to prove a substantial and material change in circumstances that would necessitate a modification in his support obligation beyond that already received by the substantial reduction in Wife's health insurance premiums.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Jerry Dean Harkleroad.

_____
JOHN W. McCLARTY, JUDGE