IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 7, 2019

## CHRISTOPHER MAURICE KIBBE v. MARY CAROLYN KIBBE

**Appeal from the Circuit Court for Washington County**
**No. 30512     James E. Lauderback, Judge**

_____

### No. E2018-00198-COA-R3-CV

_____

This post-divorce appeal concerns the father's petition to modify his spousal support obligation, to which the mother responded with her own motions concerning the father's failure to exercise his co-parenting time with their disabled daughter as agreed. Following a hearing, the trial court reduced the father's spousal support obligation but ordered him to remit payment to the mother for respite care in the event that he failed to exercise his co-parenting time. The father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Jason A. Creech and Matthew F. Bettis, Johnson City, Tennessee, for the appellant, Christopher Maurice Kibbe.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Mary Carolyn Kibbe.

### OPINION

### I.     BACKGROUND

Christopher Maurice Kibbe ("Father") and Mary Carolyn Kibbe ("Mother") were divorced by order of the court on April 28, 2014. Father, a commercial pilot, was ordered to pay $2,500 in spousal support and $1,742 in child support for their two minor children, a Son and a Daughter.[1] Father was also awarded equal co-parenting time with Son and 124 days of co-parenting time with Daughter, who is in need of constant care and

_____

[1] At that time, Father was receiving disability income based upon his diagnosis of adjustment disorder.

supervision as a result of her severe disability. Father was also ordered to pay costs associated with the Parties' marital residence until the residence could be sold and the proceeds divided. We affirmed the trial court's ruling on appeal. *See Kibbe v. Kibbe*, No. E2014-00970-COA-R3-CV, 2015 WL 1912578 (Tenn. Ct. App. Apr. 28, 2015).

Since that time, Father remarried, returned to his employment as a commercial pilot, and became the primary residential parent for Son. His child support obligation was reduced to $1,227 to reflect his increased co-parenting time with Son. However, he rarely exercised his co-parenting time with Daughter, due, in part, to his work schedule. He was also unable to sell the marital residence, despite his attempts to renovate and market the home. Mother has since obtained limited employment at the rate of $13 per hour when Daughter attends school. The Parties attended an informal settlement conference in 2016 to resolve some outstanding issues, after which Father agreed to increase his child support to $2,100, an increase of $800 per month given his increased income since his return to work. Father also agreed to exercise four nights of co-parenting time per month with Daughter. No order was entered to establish these changes.

On January 17, 2017, Father filed a petition to modify his spousal support obligation, alleging that a substantial and material change in circumstances had occurred that necessitated a change in his spousal support obligation. Father claimed that the Parties did not anticipate the difficulty in selling the marital residence or the need for remodeling to better market the home. He asserted that he could not afford to continue remitting spousal support at the current rate given his debt load and increased child support obligations. He explained that Mother's need for alimony had also declined given her eligibility to receive 50 percent of his pension. He requested modification or elimination of his spousal support obligation. He alternatively requested a reduction commensurate with any increase in his child support obligation or with Mother's receipt of his pension income. Lastly, he requested a cap on his overall support obligation pending the sale of the marital residence.

Mother responded by denying that a reduction in support was necessary. She explained that her receipt of his pension income was not an unanticipated change because she was awarded a portion of Father's retirement income at the time of the divorce. She admitted that he had failed to sell the residence but claimed that his failure to do so was a result of his unreasonable belief concerning the market value of the property. She agreed that he would remain obligated to remit child support well beyond Daughter's attainment of the age of majority but claimed that she would no longer be able to maintain her employment once Daughter aged out of the school system. She explained that the cost of a qualified caregiver was $15 per hour, while she was paid at the rate of $13 per hour.

The case proceeded to trial, at which Father, who was 55 years old at time of the hearing, testified concerning his income and debt obligations. He explained that he amassed a significant amount of debt as a result of his support obligations while he was dependent upon disability income and in the process of completing the mandatory requirements to return to his employment as a commercial pilot. Craig Torbett, Father's financial adviser, also testified concerning Father's efforts to reduce his debt given his significant support obligations and inability to sell the marital residence. Mr. Torbett opined that Father would need to resolve his outstanding debt before he reached his mandatory retirement age of 65. Likewise, his former realtor testified concerning Father's effort to sell the residence. The evidence presented established that Father's annual income was $165,090, plus disability income in 2015 and $316,352.07 in 2016. However, the record also established that Father's current expenses include his new wife's spending, excessive travel, and his step-daughter's new car. Father claimed that his work also necessitated a significant amount of travel expenses because he was based out of Indianapolis as a pilot for FedEx.

In response, Mother testified concerning Father's failure to exercise his co-parenting time with Daughter. She stated that she was unable to afford respite care to give herself time to tend to her own needs. She can also only afford to work during Daughter's school hours. She stated that Daughter would eventually age out of the school system, thereby making it impossible for her to work and have any time to care for herself when Father fails to exercise his co-parenting time as agreed.

Following trial, the trial court agreed that a reduction in spousal support was necessitated given Mother's employment and Father's inability to sell the marital residence, despite his legitimate and reasonable efforts to market the home. The court reduced Father's obligation to $1,500 per month until the residence is sold. Relative to child support, the court enforced the Parties' mediated agreement of $2,100 per month. Lastly, the court addressed Father's failure to exercise his co-parenting time as follows:

> Father agreed in mediation to spend [four] nights per month visiting with and caring for [Daughter]. He did not dispute Mother's testimony that in 2017 he has only spent [six] nights with [Daughter]. Due to [Daughter's] severe disability, Mother should be able to count on Father exercising this overnight visitation in order to give Mother some "relief" or "downtime" from her constant care of [Daughter]. From January through March 2017, Father should have spent a total of [12] nights with [Daughter]. Mother has to pay $15.00 per hour for a "respite" [caregiver] if she wants to leave [Daughter] or have any personal time. Therefore, beginning May 1, 2017, if Father does not exercise his agreed-upon [four] nights per month, he shall

pay to [Mother] the sum of $180.00 for each night that he fails to keep [Daughter] (12 hours x $15.00/hour).

The court denied the Parties' competing requests for attorney fees. Following the court's consideration of Mother's post-trial motions, the court modified its order, in pertinent part, as follows:

> That Mother has met her burden of proof regarding an upward deviation in the child support guidelines if Father fails to exercise parenting time the details of which are set out in the attached Parenting Plan. If Father declines to exercise his parenting time as set out in the attached Final Parenting Plan, he shall reimburse Mother [$15] per hour for each hour he fails to visit pursuant to the plan.[2] However, if Mother refuses Father's request for parenting time requested upon proper notice and pursuant to the Parenting Plan, Mother will not be granted compensation from Father.

In so holding, the court noted that Father was awarded four weekends, consisting of at least 48 hours, of co-parenting time with Daughter per month to occur on the weekend or during a school break. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether the court erred in ordering Father to reimburse Mother for his missed co-parenting time as respite care.

B.    Whether the court erred in its limitations placed upon Father's co-parenting time.

C.    Whether the court abused its discretion in its reduction of Father's spousal support obligation.

D.    Whether Mother is entitled to attorney fees at trial and on appeal.

---

[2] "This hourly reimbursement is based on [Daughter's] severe disabilities and Mother's necessity to hire a 'special needs babysitter' to give Mother the 'respite time' she would have received if Father exercised his Agreed Parenting Time."

## III. STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We afford great deference to a court's credibility determinations because the court is in the best position to observe witnesses and evaluate their demeanor. *Hughes v. Metro. Govt. of Nashville and Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). We review questions of law de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

## IV. DISCUSSION

### A.

Father argues that the court erred in ordering him to financially reimburse Mother for his missed parenting time as a variable child support obligation subject to modification. He notes that such variable awards are prohibited and contrary to the legislature's requirement that the court set a "specific amount" of child support.[3] He further claims that Mother's need for respite care was considered in the original divorce hearing as an alimony issue and that Mother was provided with sufficient funds to cover respite care expenses when needed. Lastly, he suggests that even if such an award were appropriate, the court erred in its entry of a child support order that exceeded the statutory cap on child support without an evidentiary basis.

In this state, child support is governed by Tennessee Code Annotated section 36-5-101. "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A). The guidelines "are a minimum base for determining child support obligations. The presumptive child support order may be increased according to the best interest of the child for whom support is being considered, the circumstances of the parties, and the rules of [the] chapter." Tenn. Comp. R. & Regs. 1240–02–04–.01(4).

Mother's need for respite care was considered in the court's initial award of alimony; however, Father's agreed upon co-parenting time has been reduced from 124 days to 48 days since that time. Father has also consistently failed to exercise a significant amount of his already limited co-parenting time, leaving Mother to care for

---

[3] "The court shall set a specific amount that is due each month, to be paid in one (1) or more payments as the court directs." Tenn. Code Ann. § 36-5-101(c)(1).

Daughter in his stead. In consideration of the foregoing, an upward deviation in the amount of support owed is indicated by the circumstances of the Parties.

We believe the Guidelines provide for such an extraordinary expense as follows:

In instances of extreme economic hardship, such as in cases involving extraordinary medical needs not covered by insurance or other extraordinary special needs for the child of a parent's current family [child living in the home with the parent for whom the parent is legally responsible], deviation from the Guidelines may be considered when the tribunal finds the deviation supported by the criteria of 1240-2-4-.07(1). In such cases, the tribunal must consider all resources available for meeting such needs, including those available from agencies and other adults.

Tenn. Comp. R. & Regs. 1240-02-04-.07. The cost of respite care is an extraordinary special need and in Daughter's best interest given her severe disability. Indeed, Daughter may not be left by herself or with someone unfamiliar with her special needs. Mother also cannot provide adequate care without some break in her services, not including her work responsibilities that admittedly do provide her with some separation. The court considered all resources available for meeting this need, either Father or a qualified caregiver at the rate of approximately $15 per hour. Under these circumstances, we uphold the court's upward deviation in child support when the amount of the special needs expense is readily ascertainable.

B.

Father next claims that the court erred in limiting his co-parenting time to weekends and school breaks. He also takes issue with the court's direction to provide 14 days' notice of his intent to exercise his co-parenting time. Trial courts have broad discretion to fashion parenting plans that best suit the unique circumstances of each case, *see Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999), and decisions regarding parenting schedules often hinge on subtle factors, such as the parent's demeanor and credibility during the proceedings. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Thus, a trial court's decision regarding a permanent parenting plan will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.* The record supports the court's fashioning of the residential schedule in this case.

C.

Mother takes issue with the court's modification of Father's spousal support obligation. "Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th edition, as

> [a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced. Alimony is distinct from a property settlement.

Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido.

The type of alimony that is at issue in this case, alimony in futuro, is a long term form of spousal support that is typically awarded

> when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1). This type of alimony is awarded on a "long term basis or until death or remarriage of the recipient" spouse. Tenn. Code Ann. § 36-5-121(f)(1). Awards of alimony in futuro "remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A); *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

"It is not sufficient to simply show a change of circumstances." *Bowman*, 836 S.W.2d at 568. Instead, "[t]he change must be substantial and material." *Id.* "[A] change in circumstances is considered to be 'substantial' when it significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan*, 60 S.W.3d at 728 (citing *Bowman*, 836 S.W.2d at 568). A change is not material if the change was "contemplated by the parties at the time of the divorce." *Wright v. Quillen*, 83 S.W.3d 768, 772 (Tenn. Ct. App. 2002). "A substantial and material change in circumstances

does not automatically entitle the petitioner to a modification." *Id.* at 773. "[T]he petitioning party must [also] demonstrate that a modification . . . is justified." *Id.*

Here, the court found a substantial and material change in circumstances as evidenced by Father's lessened ability to pay as a result of his debt obligations and failure to sell the marital residence. Mother asserts that the record does not support the court's modification when his income has increased since the time of the divorce and when much of his expenses are voluntarily assumed obligations incidental to his remarriage. Further, he rejected an early offer on the marital residence that would have obviated the need for extensive remodeling. Father responds that the modification was warranted given his good faith attempt to sell the residence without success, his increased debt load, and his increased child support obligation. He further argues that Mother's need for spousal support has decreased as a result of her employment and receipt of his pension income.

The record before us does not establish a basis to reverse the court when Father claimed, and the trial court relied upon, an unanticipated increase in financial liabilities. Moreover, the reduction of a spousal support obligation is a factually driven question that we will not reverse absent an abuse of discretion. We find no abuse of discretion based upon the record before this court. We, like the trial court, remind the Parties that an award of alimony in futuro remains in the court's control and may be increased once the marital residence is no longer a liability.

D.

Mother argues that the court erred in denying her request for attorney fees. She further requests attorney fees on appeal. Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). A right to recover attorney fees in custody and child support disputes at trial or on appeal was created in Tennessee Code Annotated 36-5-103(c),[4] which provides,

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed

---

[4] The statute was revised on July 1, 2018. The provisions of the revised statute do not apply to this action.

and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

(Emphasis added.). We affirm the trial court's denial of attorney fees in deference to the court's discretion in such matters. Exercising our discretion, we also deny the request for attorney fees on appeal.

## V.    CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary. Costs of this appeal are taxed to one-half to the appellant, Christopher Maurice Kibbe, and one-half to the appellee, Mary Carolyn Kibbe.

_____
JOHN W. McCLARTY, JUDGE